# Richmond

## Liquid Carbonic Company v. Whitehead.

### November 20, 1913.

1. Trusts and Trustees—*Trustee a Purchaser for Value—Liens—Notice—Burden of Proof.*—The trustee in a deed of trust to secure creditors is a purchaser for value, and if he is to be charged with notice of a prior right to or lien upon the property conveyed to him, the burden of proof to show such notice is on the party alleging it. The fact of notice, however, may be inferred from circumstance as well as shown by direct evidence and must be such as to affect the conscience of the purchaser, and so strong and clear as to fix upon him the imputation of bad faith. In the case at bar the trustee had such notice.

2. Notice—*Actual—Constructive.*—Actual notice and constructive notice, in any of its varieties, produce exactly the same effects upon the equitable rights and liabilities of the party charged thereby.

3. Sales—*Rights of Third Persons—Notice to Seller—Personal Liability.*—A purchaser who has notice of the rights of another and sells to a third person without giving notice to him, so as to place the subject of controversy beyond the reach of the right owner, becomes personally responsible for the demand.

4. Trusts and Trustees—*Purchaser—Notice of Trust.*—A purchaser with notice of a trust, either express or implied, becomes himself a trustee for the beneficiary with respect to the property and is bound in the same manner as the original trustee from whom he purchased.

5. Conditional Sales—*Reservation of Title or Lien—Enforcement Under Section 2462 of Code—Personal Judgment—When to Be Rendered.*—Section 2462 of the Code, as amended by the act of 1904, in relation to the reservation of title or liens on personal property and the method of enforcing the same, is a remedial statute and should be liberally construed so as to give effect to the legislative intent. The purpose of the amendment was to furnish a remedy co-extensive with any case that might fall within its purview or influence. Under the provision authorizing the court to hear and determine all questions arising out of or under the contract, which are properly raised by the pleadings, and to "render such judgment thereon as may be required by

the rules of law or equity applicable to such questions," the court has the power and it is its duty to render personal judgments against parties before it who, by reason of their wrongful dealings with the property, have put it beyond the reach of the seller, and have rendered themselves personally liable for the value of the property or the amount of the lien thereon.

Error to a judgment of the Corporation Court of the city of Buena Vista in a proceeding by motion under section 2462 of the Code for the enforcement of the rights of the seller of personal property who had reserved title thereto.   Judgment for the defendants.   Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*Glasgow & White* and *H. S. Rucker,* for the plaintiff in error.

*Scott & Buchanan,* for the defendants in error.

CARDWELL, J., delivered the opinion of the court.

The Liquid Carbonic Company, a corporation, in November, 1910, sold and delivered to L. B. Whitehead, a pharmacist doing business in the city of Buena Vista, a soda water fountain and fixtures for the price of $940.00, partly in cash and the residue in instalments of fixed amounts, to be paid at stated intervals; the title to the fountain being reserved to the vendor until the purchase money therefor was fully paid.   The contract of sale was in writing signed by the parties, and a memorandum therefrom was produced February 24, 1911, in the office of the clerk of the corporation court of the city of Buena Vista and docketed in the "Retention of Title Book No. 1," a book provided and used for the docketing of conditional sales of personal property, as authorized by section 2462 of the Code of 1904, amended by act of 1904 (Acts of 1904, p. 96).

Whitehead, on the 21st day of February, 1911, sold a one-half interest in his pharmacy, including the said soda fountain and fixtures, to one S. H. Yokeley, who thereby became a full partner with Whitehead, and this partnership was conducted by them under the name of the "Buena Vista Pharmacy" until August 15, 1911, when Yokeley sold out his interest in the business to one E. K. Morris. About the time of the sale by Yokeley to Morris, a corporation was chartered under the name of "The Whitehead Drug Company, Incorporated," to which the drug business was transferred, but at that time as well as at the time of the sale by Yokeley to Morris, the business had become a failure, and the parties theretofore conducting it totally insolvent.

On October 27, 1911, the Whitehead Drug Company had prepared by A. W. Robertson a deed of assignment to him as trustee, but for some reason this deed was never executed. Later, however, on November 18, 1911, another deed of assignment by said drug company of its assets was prepared by Robertson, to himself as trustee, which deed was duly executed, Whitehead and Morris uniting, delivered and recorded; whereupon Robertson, the trustee, took full and complete possession of the stock of drugs and fixtures conveyed to him, including the soda fountain. After considerable effort and continuing the business for several months, Robertson, trustee, sold out the entire business, including all the stock and fixtures and the soda fountain, at the gross price of $2,500, to one L. Blair, but did not receive this money from Blair. As we shall see later in this opinion, it very clearly appears that at the time of the sale by Robertson, trustee, to Blair the latter was fully informed of the claim and lien of the Liquid Carbonic Company on the soda fountain and agreed with the trustee to hold him harmless so far as this claim was concerned, and to "see that the claim was paid if the same was valid."

In the meantime and before Blair bought said stock of drugs and fixtures, he had, for and on behalf of Yokeley, bought up all the claims against the Buena Vista Pharmacy, except the claim of the Liquid Carbonic Company; the Whitehead Drug Company not having contracted any debts. Yokeley, it appears, knew and admitted that he was liable as a partner for the debts outstanding against said Buena Vista Pharmacy, and employed Blair to buy up all of these claims at the lowest rate possible, and obligated himself to reimburse Blair the amount he had paid in buying up the claims, and gave to Blair a deed of trust on property good for such amounts as Blair had paid for him. So, it also appears that when Robertson, trustee, sold the stock of drugs and fixtures, including the soda fountain, to Blair, the money thus legally coming into Robertson's hands for the benefit of the creditors secured, was payable, except the debt of the Liquid Carbonic Company, to Yokeley. It further appears that the Liquid Carbonic Company was not preferred in the deed of assignment because Whitehead assumed that it already held title to and a lien on the soda fountain for the unpaid purchase money due thereon; hence, Robertson, trustee, required Blair to agree to save him harmless as to the claim of the Liquid Carbonic Company, the trustee presuming that Blair was buying up the claims upon the trust fund for himself, as he, the trustee, was not aware of the fact that Blair was buying them for Yokeley, and believing that Blair was buying them for himself he allowed Blair to retain the purchase price of the stock and fixtures and apply it to said claims as they were all owned by him, or supposed to be, when they were in fact owned by Yokeley, a real and actual debtor liable for said claims, as well as for the claim of the Liquid Carbonic Company, which latter claim was ignored in the deal with Blair.

In this situation, the Liquid Carbonic Company made demand upon Robertson, trustee, for the balance due on its claim of title to and lien on the soda fountain amounting to $633.00, with interest to be paid out of the proceeds of the sale to Blair, but Blair declined to admit said claim as being prior in right to payment of the claims bought up by him for Yokeley, and, therefore, declined to pay over to the trustee a sufficient portion of the purchase price of the trust assets with which to discharge the claim of the Liquid Carbonic Company, and in the meantime Blair had resold the entire stock and fixtures, including the soda fountain, to H. H. Parker and J. T. L. Dickinson, who laid claim to them as purchasers without notice of the title and lien of the Liquid Carbonic Company. Thereupon the Liquid Carbonic Company filed its petition in this cause, naming as defendants thereto all of the above named parties, except Morris, the object of which was to enforce the reservation of title in the conditional sale contract above mentioned, and to get possession of the soda fountain; failing in that, for a personal judgment against A. W. Robertson, trustee, and in his own right, and against L. Blair, as well as against L. B. Whitehead and S. H. Yokeley, the original debtors to the petitioner for the purchase price of said soda fountain.

Upon the hearing of the cause on the pleadings, the demurrers of certain of the defendants to the petition were overruled, and thereupon, neither party requiring a jury, the whole matter of law and fact was submitted to the court for its decision, and the court having heard the evidence of witnesses and arguments of counsel adjudged as follows: "(1) That the contract in the petition mentioned was not docketed or recorded as required by law, and that the defendants, H. H. Parker and J. T. L. Dickinson, are complete purchasers for value and without notice of the plaintiff's claim or contract; (2) That under the

facts proven . . . the plaintiff is not entitled in this proceeding to a personal judgment against the defendants, or any of them, for its alleged claim, or any part thereof. It is therefore considered by the court that the petition be dismissed . ." with costs to the defendants. "But this order shall be without prejudice to the plaintiff to prosecute its claim to a personal judgment or decree in other proper proceedings against the said defendants or any of them."

To said judgment the Liquid Carbonic Company applied for and obtained this writ of error.

It was practically agreed, and rightly, in the oral argument before this court, that the recent decision in the cases of *National Cash Register Co.* v. *Burrow,* 110 Va. 785, 67 S. E. 370, and *National Cash Register Co.* v. *Norfolk Realty Co.,* 110 Va. 791, 67 S. E. 372, rules this case as to the question, whether or not the conditional sale contract was docketed or recorded as required by law, and that by reason of certain omissions from the contract as docketed or recorded the lower court did not err in ruling that the contract in question had not been duly docketed or recorded as required by law. The trial court, taking the view that it had no jurisdiction in these proceedings to do more than determine in whom the title to the property (the soda fountain and its fixtures) was, did not rule upon the question whether or not Robertson, trustee, when the said deed of assignment was executed and delivered to him had actual notice of plaintiff in error's contract of conditional sale to Whitehead of the soda fountain, etc., retaining title and ownership to and in the same and communicated this notice to Blair when he sold and turned over to him (Blair) the entire business of the Whitehead Drug Company, including all the stock and fixtures and the soda fountain, etc., on May 7, 1912.

In our view of the case it is necessary to determine this question of notice to Robertson, trustee, and Blair, before determining whether or not the trial court erred in ruling that it had no jurisdiction in this proceeding to do more than to ascertain in whom was the title to the property involved.

That a trustee in a deed of trust to secure creditors is a purchaser of value, is too well settled to require citation of authority. It is also true that if such trustee is, as in this case, charged with notice of a prior right to or lien upon the property conveyed to him, the burden of proof to show such notice is on the party alleging it. The fact of notice, however, may be inferred from circumstances as well as shown by direct evidence, but the proof must be such as to affect the conscience of the purchaser, and so strong and clear as to fix upon him the imputation of bad faith. *Arbuckle* v. *Gates & Brown,* 95 Va. 802, 30 S. E. 496, and authorities cited.

Tested by this rule, we have to reach the conclusion that the proof unmistakably fixes upon Robertson, trustee, as well as upon Blair, the purchaser of the trust assets, actual notice of the rights and claim of plaintiff in error with respect to the soda fountain and its fixtures. L. B. Whitehead, who directed the making of the deed of assignment to Robertson, trustee, when questioned as a witness in this cause as to whether the trustee, to whom he was making the assignment, had notice of the rights and claims of plaintiff in error, says: "Yes, sir, at the time that I called on Mr. Robertson for legal advice, I gave him full information that the Liquid Carbonic Company reserved a right in that fountain to the extent that they had in it the amount of money that was left unpaid." He further says: "The trustee knew they (Liquid Carbonic Company) had their lien on it, and the fact that he omitted it was to my mind indication that it was not necessary." The witness

in this last statement was, of course, referring to the fact that the Liquid Carbonic Company was not preferred or mentioned in the deed of assignment. Witness also said: "I am absolutely sure that he (Robertson) was thoroughly familiar with it." (Claim of Liquid Carbonic Company.) Robertson, in his testimony, when inquired of as to notice to him of the rights of plaintiff in error with respect to the soda fountain, says: "From a deed that I prepared prior to the deed that was eventually executed, it would appear that I had knowledge that there was some lien on the soda fountain." He says further: "Well, I can't say just whether I even thought about it when we drew up the second deed, but it appears, as I said from the first, that I knew at the time that Whitehead did not own an absolute title to the soda fountain." Further on, when referring to certain language in the deed, witness says: "Now that language seems to indicate that Whitehead had told me something to the effect that he did not own the soda fountain in the clear, but it has been more than a year ago and my recollection is not distinct as to exactly what was said or done." Robertson does not deny that he had notice of plaintiff in error's rights when the deed of assignment was "eventually executed," but only says in substance that he does not recollect whether or not he had in mind at the time what he admits that Whitehead had previously told him. When, however, he came to the negotiations of a sale of the trust property to Blair, he did have the matter in mind. To a question propounded by the court as to whether the claim on the soda fountain was not put in the deed "because it was supposed that there was a prior claim secured by the recordation of the vendor's lien," the witness answered: "At the time Mr. Blair purchased we discussed the matter of the lien. We knew then that the Liquid Carbonic Company claimed a balance, but Mr. Blair did not seem to think that their claim was legal. I

did not know." When asked further as to his conversation with Blair, witness answered "Oh, yes, I told him he would have to make me safe in the matter; if he (Blair) could establish the fact that the Liquid Carbonic Company had no claim, it was all right with me, but he would have to make me safe."

Whatever may have been Robertson's recollection at the time of the trial as to what he recollected at the time of the transaction being inquired into, his whole course and dealing with the soda fountain while he had it in charge and up to the time that he sold it, eight months after the deed of assignment to him, showed that he did recollect the lien of plaintiff in error and that this knowledge was sufficient to affect his conscience. Accordingly, when Robertson came to consummate the sale to Blair, he required Blair to agree to save him harmless. Later Blair, it seems, did not recognize the binding force of his agreement to save Robertson harmless with respect to plaintiff in error's claim, and Robertson wrote him several letters insisting upon Blair's living up to his agreement, in which letters Robertson's statements clearly show that he, all through this transaction from his first interview with Whitehead to the sale to Blair, necessarily knew of the rights and claim of plaintiff in error with respect to the soda fountain. The fact is he relied on Blair "to save him harmless" as he had agreed, while Blair was relying upon defeating plaintiff in error's claim on the ground that it had not been duly docketed or recorded, overlooking the fact that if he had actual notice of this lien and the rights reserved to plaintiff in error thereby, the failure to properly docket and record the claim would not avail him.

"It is important to remember that actual notice and constructive notice, in any of its varieties, produce exactly the same effects upon the equitable rights and liabilities of the party charged thereby; the general rule under con-

sideration equally includes both kinds within its operation." 2 Pom. Eq. Jur., sec. 690.

As before stated, Blair had actually bought up for Yokeley (who admitted in his testimony that he was liable for every dollar of it) the indebtedness of the Buena Vista Pharmacy and the Whitehead Drug Company, and Robertson, with full knowledge of the claim and rights of plaintiff in error, sold the entire trust assets under his control to Blair, who had like knowledge; and Blair sold the property to Parker and Dickinson at a price over $200 more than that he was to pay the trustee for it, withholding from them the knowledge which he possessed as to the rights of plaintiff in error, so that they (Parker and Dickinson) became purchasers for value and without such notice. The proof conclusively shows that the parties, other than Parker and Dickinson, purchasing the soda fountain and dealing with respect to it, had full actual knowledge of the claim and rights of plaintiff in error, and that in these circumstances Blair was permitted to retain the entire sum of the purchase money ($2,500), not only with knowledge of the rights of plaintiff in error in and to the soda fountain, but with the deliberate purpose of subsequently trying to defeat its claim. Whitehead and Yokeley were primarily liable for this debt and Robertson, trustee, and Blair having dealt with the soda fountain in the manner stated made themselves personally liable for the amount of plaintiff in error's claim with interest as asserted in the petition in these proceedings.

"A purchaser who has notice of the rights of another, and sells to a third person without giving notice thereof to him, so as to place the subject of controversy beyond the reach of the rightful owner becomes personally responsible for the demand." *Thompson* v. *Powell,* 5 Leigh (33 Va.) 576; *Hobson* v. *Whitlow,* 80 Va. 784.

The learned author of Pom. Eq. Jur., *supra*, in section 688, under the headlines, *"Effects of Notice—Illustrations,"* says: "The third, and in its practical effects by far the most important, rule is that a party taking with notice of an equity takes subject to that equity. The full meaning of this most just rule is that the purchaser of an estate, legal or equitable, even for a valuable consideration, with notice of any existing equitable estate, interest, claim or right, in and to the same subject matter, held by a third person, is liable in equity to the same extent and in the same manner as the person from whom he made the purchase; his conscience is equally bound with that of his vendor, and he acquires only what his vendor can honestly transfer. The applications of this rule are as numerous as are the various kinds of equitable interests. . ." The first illustration given by the learned author is peculiarly applicable to the facts in the case at bar: "A purchaser with notice of a trust, either express or implied, becomes himself a trustee for the beneficiary with respect of the property, and is bound in the same manner as the original trustee from whom he purchased."

The remaining question here presented is, whether or not the lower court erred in its ruling that plaintiff in error was not entitled "in this proceeding to a personal judgment against the defendants, or any of them, for its alleged claim, or any part thereof."

Before the amendment to section 2462 of the Code of 1904, *supra*, the section did no more than simply provide for the reservation of title to chattels sold conditionally, without mention of any proceedings to enforce the same, and up to that time the parties were left to their remedy, either at law or in equity, as the nature of the case required. The statute as amended in 1904 (Acts 1904. p. 96) under which this proceeding was instituted, is a remedial statute and must be liberally construed to give effect

to the legislative intent. It appears to us that the purpose of the amendment of the statute is to furnish a remedy co-extensive with any case that might fall within its purview or influence. No other words appear to be needed to enable the court to do full and complete justice to all concerned in a proceeding authorized by the statute. In subdivision one it sets forth that, "Every sale or contract for the sale of goods and chattels wherein the title thereof, or a lien thereon, is reserved until the same be paid for in whole or in part, or the transfer of title is made to depend on any condition, and possession be delivered to the vendee, shall, in respect to such reservation and condition, be void as to creditors of and purchasers for value without notice from such vendee unless such sale or contract be in writing, signed by both the vendor and vendee, in which the said reservation or condition is expressed, and until and except from the time that a memorandum of said writing setting forth the date thereof, the amount due thereon, when and how payable and a brief description of said goods or chattels, be docketed in the clerk's office of the circuit or corporation court of the county or corporation in which said goods or chattels may be."

Sub-division two provides that all reservations, liens, conditions, and the collection of all money mentioned in any such written contract, whether recorded or not, may be enforced on petition, etc. "A copy thereof shall be served on each person whose rights will be affected by the proceedings, which may be had thereon at least ten days before the date named therein for asking for judgment, and the original shall be filed with the justice or clerk of court at least ten days before such date.

"A defendant shall, when the case is in a circuit or corporation court, state the grounds of his defense or his counter claim or off-set in an answer to the petition, to which the plaintiff may reply, and no further pleading shall

be required. But any such pleading may be demurred to as pleadings in other cases. The court or justice may permit all proper amendments to the petition or other pleadings. The court or justice shall hear and determine all questions arising out of or under the contract, which are properly raised by the pleadings (no pleadings other than the petition being necessary before a justice), and shall render such judgment thereon as may be required by the rules of law or equity applicable to such questions.

"The property may be sold, or possession delivered, or such other disposition made of it as the court or justice may direct. When the judgment is for money or costs or for the specific property, execution therefor may issue as in other cases. Where property is to be sold or other disposition made of it, the judgment or order of the court or justice shall be executed by the sheriff or other officer of the court authorized to execute process or by a constable."

There is no room for any other construction of the statute than that in a proceeding under it the court may and should render such judgment as the facts justify under the "rules of law and equity" applicable to the questions it is called upon to adjudicate. The chattel in this case had been, by the wrongful acts of the defendants, placed beyond the reach of its rightful owner to the extent that it had not been paid for, and, therefore, the only relief that could be given to the petitioner (plaintiff in error) in the proceeding was a personal judgment against the defendants, jointly and severally, whose wrongful dealings with the chattel in question had put it beyond the reach of the rightful owner thereof, or the mandate of the court, for the amount of purchase money due and owing on the chattel to the petitioner, with interest thereon from the 1st day of April, 1911, until paid, as alleged in its petition, and the costs of these proceedings.

With the rights of the defendants *inter sese,* with respect to their wrongful dealings with the soda fountain in question, plaintiff in error is not concerned. It having alleged in its petition and proven the facts to which we have adverted, it could not by any reasonable construction of the statute have been relegated to another forum to prosecute its claim to a personal judgment or decree against these defendants.

It follows that the judgment of the trial court has to be reversed, and this court will enter the judgment which that court should have entered, viz.: that plaintiff in error recover of defendants in error, A. W. Robertson, as trustee and in his own right, L. Blair, L. B. Whitehead and S. H. Yokeley, jointly and severally, the sum of six hundred and thirty-three dollars ($633.00), with interest thereon from the 1st day of April, 1911, till paid, and the costs of this litigation.

*Reversed.*