# Wytheville

P. R. Smith Motor Sales, Inc. v. C. D. Lay, E. W. Bond, Frank Yeary and W. R. Peters.

June 12, 1939.

Record No. 2079.

Present, All the Justices.

The opinion states the case.

*H. J. Kiser* and *C. W. Hamilton,* for the plaintiff in error.

*Vernoy B. Tate* and *Bandy & Bandy,* for the defendants in error.

HOLT, J., delivered the opinion of the court.

In issue here is the priority of liens.

In February, 1938, one Champ V. Moneyhun came to the office of P. R. Smith Motor Sales, Inc., a North Carolina corporation with its principal office at Wilmington, to purchase a Dodge commercial truck that he might do some hauling at Myrtle Beach, South Carolina. As a part of the purchase price he offered to trade in a Plymouth automobile represented as being free from all liens. That automobile was valued at $448.59, which sum was credited on this purchase and a note was given for the balance. Upon these conditions a conditional sales contract of date February 28, 1938, was executed. Afterwards the sales corporation found out that the car which it had taken in was not free from liens and sent its agent to South Carolina to see Moneyhun. This agent, J. D. White, demanded that the truck be returned. Moneyhun "refused to bring the truck back, said he needed it and had a few dollars in his pocket and would come to Virginia and get the balance." He did return with White to Wilmington, paid $30 in cash, and for the balance

due of $651 executed a new note of March 12, 1938, together with a chattel mortgage of even date on the truck. The conditional sales contract was never recorded but appears to have been abandoned. It was superseded by this mortgage which was filed for registration on March 14, 1938, with the Register of Deeds for Horry county, South Carolina, and was registered in Book J-2, p. 611.

Moneyhun, who had lived with his family in Coeburn, Virginia, went back in this truck to that town. Just where he then lived is not clear from the record. In the conditional sales contract he gave his home address as Ocean Drive, South Carolina, and Mr. White said that he then resided there, but he had not brought his family to South Carolina.

On September 9, 1937, Moneyhun, in Coeburn, executed a note payable to the Farmers Exchange Bank for $500, due in six months, which was endorsed by the defendants in error. He thereafter paid no attention whatever to it. These endorsers, defendants in error, paid it. When they found that Moneyhun was in town with this truck, they sued out an attachment on March 18, 1938, which was levied thereon on the same day.

Smith Motor Sales, Inc., intervened by petition, set up the lien of their chattel mortgage, executed a proper bond, and took possession of it. The trial justice on April 6, 1938, gave judgment upon the attachment and held that under it the defendants in error had a first lien. There was an appeal to the Circuit Court of Wise county, which afterwards affirmed the judgment of the trial justice.

There is no controversy as to the amount due to the attaching creditors or to the sales corporation.

This chattel mortgage was never recorded in Virginia and for that reason the attaching creditors claim priority and base their contention upon Code, section 5197, which reads:

"No mortgage, deed of trust, or other encumbrance created upon personal property while such property is located in another State shall be a valid encumbrance upon said property after it is removed into this State as to purchasers for valuable consideration without notice and credi-

tors unless and until the said mortgage, deed of trust, or other encumbrance be recorded according to the laws of this State in the county or corporation in which the said property is located in this State."

Was this truck, in contemplation of the statute, "removed into this State?"

Moneyhun's declared purpose in coming to Coeburn was to secure money to pay off the chattel mortgage lien. The record does not tell us how long after his arrival the attachment issued. Mr. Bond, one of the attaching creditors, was interrogated as to this and said, "I know he was there the day before the attachment was made." "Right shortly" after the attachment issued Moneyhun asked him that it be released that he might go back to North Carolina; this request was refused.

The purpose for which he came to Coeburn is plain, and it is fairly plain that the attachment issued promptly upon his arrival.

"Removal" connotes something more than a mere change of location; some reëstablishment is suggested. Among the many definitions given in Webster's New International Dictionary is this: "To change or shift the location, position, station, or residence, of; to transfer, esp. in order to reëstablish." "Till Birnam wood remove to Dunsinane."

We have held that a car in transit in Virginia has not been "removed into this State." *C. I. T. Corporation* v. *Guy*, 170 Va. 16, 195 S. E. 659. "Removal" alone is not sufficient. The levy can only be made "after it is removed."

In *W. H. Applewhite Co., Inc.* v. *Etheridge*, 210 N. C. 433, 187 S. E. 588, it appears that a sawmill covered by a chattel mortgage in North Carolina was removed to Virginia and operated here. The court held that the mill had come to rest in Virginia and for that reason protected the Virginia purchaser against a North Carolina lien but made this comment on our statute:

"It should be noted that the statute under consideration refers to encumbrances on property 'after it is removed'

into the state of Virginia, which would indicate that it was not intended to include encumbrances on property which was only transitorily or temporarily in the state. The word 'removed,' as used, implies not only the taking of the property into Virginia, but also the allowing of the property to come to rest therein—the gaining a situs therein."

This we quoted with approval in *C. I. T. Corporation* v. *Guy, supra.*

In *Hare & Chase* v. *Tomkinson* (June, 1925), N. J. Supp., 129 A. 396, 397, it appears that a truck was held in Pennsylvania under a Pennsylvania conditional sales contract and was operated between Philadelphia and Atlantic City. It was levied upon in New Jersey as having been removed into that State. The court, in disposing of that contention, said:

"A review of the evidence satisfies me that there was no evidence of any removal of this truck within the meaning of the Conditional Sales Act [N. J. S. A. 46:32-1 *et seq.*]. The contract between the Mack Corporation and Tomkinson was made in Philadelphia. The situs of the truck was Philadelphia. The word 'removal' in the New Jersey statute does not mean a mere bringing of the truck within the territorial limits of New Jersey. If this were the law, then no seller who had sold in some other state an automobile upon the installment plan, with reservation of title, could have his rights protected under the agreement by which the automobile was sold against a New Jersey creditor, if the automobile was brought within the state of New Jersey. As most automobiles are sold upon the installment plan, it can be readily seen to what such a construction of the act of 1919 would lead."

It is true that the plaintiff in error knew of Moneyhun's intended visit to Coeburn, but it had no knowledge of his method of transportation. The truck was not used with its consent. So far as this record shows, Moneyhun came to Coeburn for a single purpose and with the intention to return when that had been accomplished. Immediately upon his arrival, or within a short time thereafter, the attach-

ment issued, and against his protest, his purpose to return was prevented by the attaching creditors.

Surely a merchant in Bristol, Virginia, who drove over to Bristol, Tennessee, to collect a bill would not have removed his car into Tennessee—a removal contemplates some change of situs.

The original chattel mortgage is in evidence; its execution was proven, and it was properly acknowledged for recordation.

Hon. H. H. Woodward, a South Carolina lawyer of long experience, testified that he was familiar with the law of South Carolina relating to chattel mortgages. He was handed that in judgment. It appeared upon its face to have been executed by Champ V. Moneyhun of Ocean Drive, South Carolina, to P. R. Smith Motor Sales, Inc., dated March 12, 1938, for the sum of $651, recorded in Book J-2, p. 611, in the office of the clerk of the Court of Common Pleas of Horry county, South Carolina. He said that this was a valid lien in South Carolina and that he examined the records in said office and found this lien recorded there and no other lien on the truck in it described.

After it was executed and acknowledged, White took it to the Register of Deeds for Horry county, sat by him in his office and saw it recorded, after which it was given back to him. He knew the Register of Deeds and said that it was in his office that papers of this character were recorded. He saw the Register of Deeds make thereon this endorsement:

" 'Filed for registration at 3:00 o'clock P. M., March 14, 1938, and registered in the office of the Register of Deeds for Horry county in Book J-2, page 611,' and bearing the signature in both typewriting and letter 'John Holt, Register of Deeds.' "

Defendants in error contend that the proof of recordation of this instrument is not in accordance with the Virginia statutes, Code, sections 6206, 6207. These statutes were intended to make competent evidence theretofore incompetent. Proof at common law remained as it had there-

tofore been. *F. D. Cummer & Son* v. *R. M. Hudson Co.*, 141 Va. 271, 127 S. E. 171.

■ The execution of the chattel mortgage has been proven; it was acknowledged and was in proper form for recordation. There is unquestioned evidence to the fact that it was given to the proper officer for recordation and was recorded in his presence. The original with endorsements thereon was accepted in evidence by the trial court, and we think rightly accepted.

■ This Dodge truck, covered by a duly recorded mortgage in a foreign state, could be attached only "after it is removed into this State." It was never so removed. It follows that the chattel mortgage lien is superior to the lien of attachment.

■ The truck must be sold. After providing for the costs of sale, the proceeds thereof must be applied upon the chattel mortgage debt. If anything be left, it goes to the attaching creditors.

*Reversed and remanded.*