# Richmond

## UNIVERSAL C. I. T. CREDIT CORPORATION v. MARTIN R. KAPLAN, T/A L & M MOTOR COMPANY.

April 23, 1956.

Record No. 4514.

Present, All the Justices.

The opinion states the case.

*Henry E. Howell, Jr., (Bernard Glasser* and *Jett, Sykes & Howell* on brief), for the appellant.

*Stanley E. Sacks (Sacks & Sacks* on brief), for the appellee.

SMITH, J., delivered the opinion of the court.

On February 22, 1954, Clark A. Bailey, an enlisted man in the United States Navy, purchased a 1953 automobile from the Natrona Motor Company of Casper, Natrona county, Wyoming. To secure the unpaid balance of $2,441.70 on the purchase price, Bailey and the Natrona Motor Company entered into a conditional sales contract which was immediately assigned to appellant, Universal C. I. T. Credit Corporation. Under the terms of the contract title to the automobile was reserved in the vendor pending payment by Bailey of the total purchase price. It was also agreed that Bailey would not "sell, encumber, or abandon the car or use it for hire or illegally" and that upon his default in any one of thirty monthly installments the entire balance would become due and payable and would entitle the vendor to repossess the vehicle.

On February 23, 1954, pursuant to the laws of Wyoming, the conditional sales contract was recorded with the Natrona county Clerk who issued to Bailey a certificate of title on the face of which appellant's name and interest in the automobile were typed in a space entitled "VEHICLE SUBJECT TO THE FOLLOWING LIENS AND NO OTHERS." Bailey's address appears on both the certificate of title and the conditional sales contract as Evansville, Wyoming, the home of his mother, and following his name as written on these papers is "EN3 USN," which he testified meant engineman third class, United States Navy.

Shortly after purchasing the car Bailey drove to Norfolk, "in and around" which he had been stationed since August of 1950. Some time prior to May of 1954 he returned to Wyoming in the automobile

and personally paid the first installment which was due on April 3, 1954; however, he defaulted on the subsequent payments. Thereafter appellant obtained Bailey's address, which was USS BOTTINEAU, FPO, New York, New York, from his mother and wrote him to store the car and get it refinanced, to which he replied with a request for an extension of time in which to make the payments. This request was refused and on June 16, 1954, upon returning from a tour of duty overseas, Bailey erased from the Wyoming certificate of title appellant's name and interest in the car and sold it for $1,300 to appellee, Martin R. Kaplan, trading as L & M Motor Company. When appellee purchased the automobile it had Wyoming license plates on it.

Appellee testified that he did not see the erasure on the Wyoming certificate of title at the time he purchased the car, but when he examined the certificate in court the erasure was readily observed by him. Appellee sent the Wyoming certificate to the Division of Motor Vehicles which subsequently issued to him a Virginia certificate of title showing no liens. Appellant's interest in the automobile was never recorded at any place in Virginia.

Appellee estimated the fair market value of the car as it was on the date of its purchase by him at $1,500. One week later and after about $75 worth of repairs had been made, appellee sold the vehicle to Howett Motor Company in Columbia, North Carolina, for $1,525. The whereabouts of the automobile at the time of trial was not shown.

Subsequently, appellant filed a bill of complaint against appellee and Bailey in which it alleged that Bailey owed a balance of $2,192.56 on his conditional sales contract and that he had unlawfully erased its lien from the Wyoming certificate of title and had sold the car to appellee. In its prayer for relief appellant asked that its lien "be restored to the certificate of title and be declared a valid and subsisting lien thereon; that the defendants * * * be required to return to your complainant the vehicle which they are unjustly detaining or pay to your complainant its alternate value of $2,192.56," and for general relief. Appellant did not, however, submit any evidence as to the value of the car at the date of the alleged conversion.

After hearing the evidence partly ore tenus and partly on depositions, the trial court held in its final decree that appellant was entitled to recover from Bailey the sum of $2,192.56, and dismissed the complaint as to appellee. To review this decree we awarded ap-

pellant this appeal. Since Bailey did not file an answer to the complaint nor join in the appeal the decree is final as to him.

A motion by appellee in the trial court to dismiss the suit on the ground that appellant had a complete and adequate remedy at law was overruled. Whether this ruling constitutes reversible error is argued in the briefs. However, this issue is not properly before us because appellee has failed to file an assignment of cross-error as required by Rule 5:1, § 4. But it may not be amiss to point out that Code, § 55-91, which provides for a proceeding in equity to enforce a conditional sales contract, and Code, § 8-138, which provides for the transfer of cases from one side of the court to the other, are remedial and not technical and therefore harmless infringements of their provisions will be disregarded by this court. *Quick* v. *Southern Churchman Co.*, 171 Va. 403, 199 S. E. 489; *Sacks* v. *Theodore*, 136 Va. 466, 118 S. E. 105; *Universal Credit Co.* v. *Taylor*, 164 Va. 624, 180 S. E. 277; *Liquid Carbonic Co.* v. *Whitehead*, 115 Va. 586, 80 S. E. 104.

The primary issues in the case are whether appellant had a valid and enforceable lien in Virginia at the time appellee purchased the vehicle from Bailey and, if so, whether appellee is liable to appellant for damages for conversion of the automobile secured by its lien.

It is not disputed that according to the laws of Wyoming the lien of appellant's conditional sales contract was duly recorded and was, under the laws of that state, a valid lien prior to that of subsequent purchasers and creditors of Bailey. Appellee contends, however, that appellant's lien is not valid and enforceable in Virginia because it was not recorded in this state as required by Code, § 55-99, which provides as follows:

"Subject to the provisions of the next succeeding section [which pertains to the recordation of instruments affecting civil aircraft of the United States] no mortgage, deed of trust or other encumbrance created upon personal property while such property is located in another state shall be a valid encumbrance upon such property after it is removed into this State as to purchasers for valuable consideration without notice and creditors unless and until such mortgage, deed of trust or other encumbrance be recorded according to the laws of this State in the county or corporation in which such property is located in this State."

Appellant contends that this statute does not affect the validity and enforceability of its lien in Virginia because: appellee was not a pur-

chaser "without notice" since he must be held to have seen what he should have seen, namely, the rough erasure of appellant's lien from the Wyoming certificate of title; the automobile had not been "removed into" and "located in this State" at the time of its purchase by appellee; the lien is not a "mortgage, deed of trust or other encumbrance" within the meaning of the statute.

While our examination of the Wyoming certificate of title reveals that there is some merit in appellant's contention that Bailey's erasure of appellant's lien was sufficiently obvious to put appellee on notice to make further inquiry of Bailey's interest in the automobile, we base our decision on this phase of the case on the correctness of appellant's other contentions.

We agree with appellant that the vehicle had neither been "removed into" nor "located in" Virginia at the time of its sale to appellee. In 1886 this court held in *McComb* v. *Donald's Administrator, &c.,* 82 Va. 903, 5 S. E. 558, that an unrecorded conditional sales contract did not come within the scope of Code 1873, c. 114, § 5, which provided that "every deed of gift, or deed of trust or mortgage conveying real estate or goods and chattels, shall be void as to creditors and subsequent purchasers for valuable consideration without notice," unless recorded. Subsequently, in Code 1887, c. 109, § 2462, now Code, § 55-88, it was provided that, "Every sale or contract for the sale of goods or chattels, wherein the title is reserved," shall be void as to subsequent creditors and purchasers unless in writing and recorded. Thereafter, in 1894, this court held in *Craig* v. *Williams,* 90 Va. 500, 18 S. E. 899, that a chattel mortgage executed in another state, located there and duly recorded, need not be recorded in Virginia upon a removal of the property to this state, and that, under comity, the lien of a foreign chattel mortgage could be enforced here since there was no express Virginia statute requiring foreign mortgages to be recorded. This holding prompted the legislature to enact in the same year, (Acts 1893-4, p. 545), what is now Code, § 55-99.

This court was first called upon to apply Code, § 55-99 to motor vehicles in *C. I. T. Corporation* v. *Guy,* 170 Va. 16, 195 S. E. 659 (1938), where an automobile purchased in South Carolina under a conditional sales contract, duly recorded in that state, was involved in a collision while passing through Virginia en route to Maryland, as a result of which the car was attached. In holding that the claim of the finance corporation was superior to that of the attachment, this court ap-

proved the holding in *Osmond-Barringer Co.* v. *Eva A. Hey*, 7 Va. Law Reg. (N. S.) 175, an opinion written by Judge Crump while he was judge of the Law and Equity Court of the city of Richmond, that a conditional sale was not an "encumbrance" under § 5197 of the Code of 1936, now Code, § 55-99, and that § 5189 of the Code of 1936, now Code, § 55-88, "applied to intrastate movements of property only and did not cover conditional sales contracts which need not be recorded in Virginia, if duly recorded elsewhere." 170 Va., at page 23. The court further held that the automobile was not "removed" into Virginia within the meaning of that term as used in Code, § 55-99. In so holding the court quoted with approval from a North Carolina case, *W. H. Applewhite Co.* v. *Etheridge*, 210 N. C. 433, 187 S. E. 588, 590, in which that particular statute had been construed, as follows: " 'The word "removed," as used, implies not only the taking of the property into Virginia, but also the allowing of the property to come to rest therein—the gaining of a situs therein.' " 170 Va., at page 24.

The next case involving Code, § 55-99 to come before this court was *P. R. Smith Motor Sales* v. *Lay*, 173 Va. 117, 3 S. E. 2d 190 (1939), where a chattel mortgage was executed and duly recorded in South Carolina on a truck that was subsequently driven into Virginia by the debtor for the purpose of obtaining money to pay off the chattel mortgage. It was held that the truck was not "removed" into Virginia within the meaning of Code, § 55-99 and that therefore the chattel mortgage was superior to an attachment levied on the truck while it was in this state. In so holding the court said: " 'Removal' connotes something more than a mere change of location; some re-establishment is suggested." 173 Va., at page 121.

■ It is therefore settled that before recordation is required under Code, § 55-99, the property brought into Virginia must come to rest and be located here to the extent of acquiring a new situs. The acquisition of a new situs signifies something more than the temporary or transient presence of the property in this state. It implies some degree of permanency and unless this requirement is established it can not be said that the property has been "removed into" and "located in" Virginia as contemplated by the statute. *C. I. T. Corporation* v. *Guy*, *supra*; *P. R. Smith Motor Sales* v. *Lay*, *supra*. See *Universal C. I. T. Credit Corporation* v. *Walters*, 230 N. C. 443, 53 S. E. 2d 520, 10 A. L. R. 2d 758 (construing the words "removed" and "situated"); *Yellow Mfg. Acceptance Corp* v. *Rogers*, 235 Mo. App.

96, 142 S. W. 2d 888 (construing the words "removed," "situated" and "located").

We hold that the evidence in the instant case is insufficient to prove that the automobile temporarily brought into Virginia by sailor Bailey was "removed into" and "located" here within the meaning of Code, § 55-99, and that insofar as this statute is concerned the appellant's conditional sales contract is valid and enforceable in Virginia.

In addition to his arguments as to the meaning of Code, § 55-99, appellee also relies on *C. I. T. Corporation* v. *Crosby & Co.*, 175 Va. 16, 7 S. E. 2d 107 (1940), in support of his contention that appellant's lien is not valid and enforceable. That case held that the liens of two conditional sales contracts on motor vehicles duly recorded under the laws of Georgia were not superior to the lien of an attachment levied on the vehicles while they were being operated in Virginia for commercial purposes. This holding was based on the finding that the vehicles had been operated in Virginia "for purposes other than purposes of pleasure" more than three times a month without having been registered temporarily or permanently as required by § 2154 (70) of the Code of 1936, now Code, §§ 46-117 and 46-118. These statutes provide that if a nonresident owner operates a vehicle in Virginia more than three times a month for purposes other than purposes of pleasure without temporary registration then he is required to register it in the same manner as if he were a resident. The court then pointed out that under § 2154 (59) of the Code of 1936, now Code, § 46-42, every owner of a motor vehicle intended to be operated upon the highways of Virginia is required to "apply to the division for and obtain the registration thereof and a certificate of title therefor," and that under § 2154 (64) of the Code of 1936, now Code, § 46-71,* a reservation of title, lien or encumbrance not recorded on the certificate of title was subordinate to an attachment.

---

* Code, § 46-71 provides:

"*Certificate as notice of lien.*—Such certificate of title, when issued by the Division showing a lien or encumbrance, shall be deemed adequate notice to the Commonwealth, creditors and purchasers that a lien against the motor vehicle exists and the recording of such reservation of title, lien or encumbrance in the county or city wherein the purchaser or debtor resides or elsewhere is not necessary and shall not be required. Motor vehicles, trailers, or semi-trailers registered or for which a certificate of title shall have been issued under this title shall not be subjected to, but shall be exempt from, the provisions of §§ 55-88 to 55-90 and 55-152, nor shall recordation of such lien in any other place for any other purpose be required or have any effect."

It will be observed that while Code, § 46-71 provides that where a vehicle is registered or for which a certificate of title is obtained under the Motor Vehicle Code it shall be exempt from the recordation provisions applicable to personal property under §§ 55-88 to 55-90 and 55-152, the statute does not specifically exempt such vehicles from the provisions of Code, § 55-99.

It should also be noted that in addition to discussing Code, §§ 55-88 and 55-99, the court in *C. I. T. Corporation* v. *Guy, supra,* held that under the Motor Vehicle Code, Acts 1932, c. 342, p. 613; Acts 1934, c. 265, p. 380, now Code, § 46-71, a conditional sales contract was an "encumbrance" and that the provisions of that statute applied to both residents and nonresidents who operate here, but that it "was never intended to place the burden upon non-residents who are never in Virginia except upon some casual occasion." 170 Va., at page 25.

The provisions of Code, §§ 46-117 and 46-118, which pertain to the registration of foreign vehicles operated in this state "for purposes other than purposes of pleasure" and which were applied in *C. I. T. Corporation* v. *Crosby & Co., supra,* are not applicable to the instant case because the vehicle here involved is a passenger car. However, Code, §§ 46-112 and 46-115 provide similar requirements for foreign passenger cars regularly operated here.

Code, § 46-112 provides that a "nonresident owner who shall operate or permit the operation, or expect to operate or expect to permit the operation of any passenger car in this State for a consecutive period exceeding thirty days shall temporarily register on forms prepared and distributed by the Division, within the first thirty days of such period * * *." And Code, § 46-115 provides that if a foreign passenger car is not temporarily registered within thirty days then permanent registration is required.

The evidence shows that Bailey was stationed "in and around Norfolk" during the three and one half months between the date he purchased the automobile here involved and the date he sold it to appellee, and that during that time he not only returned to Wyoming in the vehicle but he served a tour of duty overseas. The evidence does not show how long he was overseas nor when or how often the car was operated in Virginia. Consequently, we hold that the evidence does not prove that the foreign passenger car here involved was operated or intended to be operated in Virginia "for a consecutive period exceeding 30 days" as required by Code, § 46-112, and that the provisions of the Motor Vehicle Code applicable to the registration

of foreign passenger cars do not render appellant's lien invalid and unenforceable in Virginia.

Having determined that appellant's lien is valid and enforceable in Virginia we shall next examine appellant's contention that appellee was guilty of conversion when he purchased and subsequently sold the automobile. On this phase of the case the trial court, in a memorandum opinion, said: "Bailey had the right to sell his equity in said automobile to Kaplan and to deliver him the possession thereof. Kaplan had the same right to dispose of said equity and to deliver possession to a purchaser. If the conditional sale agreement was valid when the automobile came into Kaplan's possession, it is still valid. A purchaser of property subject to a conditional sale agreement does not become personally responsible for the payment of the indebtedness secured unless he assumes that obligation."

Appellee admits that if he had "damaged or injured the automobile in any fashion, lessening the value of appellant's security, it would have been conversion," but contends that "it could not have been a conversion to merely pass the vehicle along and over to a purchaser, who purchased subject to any valid enforceable lien or rights appellant might have had." In support of this contention appellee quotes the following language from Chattel Mortgages and Conditional Sales, Jones (Bowers ed.), p. 1358: "* * * to constitute a conversion of personal property, there must be some repudiation of the owner's rights, or some act of dominion over it inconsistent with such rights, or some act done which has the effect of destroying or changing its character."

Although we find no fault in this statement of the applicable law, we disagree with the conclusion reached by appellee when this law is applied to the facts of the case. A similar statement of the law may be found in *Buckeye Nat'l Bank* v. *Huff*, 114 Va. 1, 11, 75 S. E. 769, where the court said:

" '* * * Conversion is any wrongful exercise or assumption of authority, personally or by procurement, over another's goods, depriving him of their possession.' *Hale* v. *Ames*, 2 T. B. Mon. (Ky.) 143, 15 Am. Dec. 150; *St. George* v. *O'Connell*, 110 Mass. 475; 28 Am. & Eng. Enc. L. (2d ed.) 691, *et seq.*

"In *McPhetus* v. *Page*, 83 Me. 234, 22 Atl. 101, 23 Am. St. Rep. 772, the opinion says: 'Any act of dominion wrongfully exerted over property in denial of the owner's right, or inconsistent with it, amounts to a conversion.' "

In 19 Michie's Jur., Trover and Conversion, § 4, p. 27, this is said: "Any distinct act of dominion wrongfully exerted over the property of another, and in denial of his rights, or inconsistent therewith, may be treated as a conversion and it is not necessary that the wrongdoer apply the property to his own use. And when such conversion is proved, the plaintiff is entitled to recover, irrespective of good or bad faith, care or negligence, knowledge or ignorance. * * *" Also, in 89 C. J. S., Trover and Conversion, § 48(b), p. 554, this is said: "A wrongful sale of goods whereby a person who has a part interest therein, or a lien thereon, is deprived of his right, is a conversion whether the wrongdoer is an owner of another part or a lienholder, or a stranger to the property. * * *" A similar statement of the law applicable to this case may be found in 53 Am. Jur., Trover and Conversion, § 36, p. 832, where this is said: "A person who purchases personal property from one not authorized to sell the same may be held liable for the conversion thereof, regardless of the fact that the purchaser was honestly mistaken, or acted innocently, in good faith, and without knowledge of the seller's right to make the sale. * * *"

In the instant case the conditional vendee, Bailey, agreed in the conditional sales contract not only to keep current his monthly installments upon penalty of losing the right of possession of the automobile, but he also agreed not to "sell, encumber, or abandon the car." Since he was in default on his payments and had no right to sell the car, when he did sell the vehicle he exercised a dominion over it that was inconsistent with the rights of appellant. Consequently, he was guilty of conversion when he sold the car; and appellee was guilty of conversion upon buying and exercising dominion over the vehicle inconsistent with the rights of appellant. It follows therefore that appellee is liable to the appellant for the value of the car as of the date of the conversion.

For the reasons stated the decree is reversed and the case remanded for a new trial to determine the amount of appellant's damages based on the value of the automobile at the time of its conversion by appellee.

*Reversed and remanded.*