324

## CIRCUIT COURT OF FAIRFAX COUNTY

Virginia Podiatry
Residency Foundation

v.

Hurst

March 12, 2003

Case No. (Law) 202381

BY JUDGE JONATHAN C. THACHER

This matter came before the Court on a bench trial on December 10, 2002. The matter was taken under advisement to determine whether Defendant's expenditure of $17,000.00 in funds from the Virginia Podiatric Residency Foundation to himself was an authorized expenditure or whether Defendant wrongfully converted Foundation funds and was unjustly enriched by the taking of the funds. For the reasons set forth in this letter opinion, the Court finds that Defendant Hurst wrongfully converted Virginia Podiatric Residency Foundation funds to himself without authorization. Judgment is entered for the Plaintiff for $17,000.00 without interest.

*Facts*

Dr. Hurst, a licensed podiatric physician, was the duly elected Treasurer of the Virginia Podiatric Residency Foundation (hereinafter Foundation) from approximately 1991 until September 2001. Dr. Hurst is the sole owner and operator of the Centerville Foot & Ankle Clinic (hereinafter Clinic) located in Centerville, Virginia, where he practices podiatric medicine. The Foundation is a membership corporation that coordinates and subsidizes podiatric medical residents who perform a three year residency at sponsor hospitals in the Northern Virginia area. Member Doctors pay a fee and are

then allowed to use the residents who "scrub in" on surgical procedures. Dr. Hurst resigned the Treasurer position on September 30, 2001, at the request of the Foundation.

During his tenure as treasurer, Dr. Hurst served without compensation until 1997, when he began receiving a salary from the Foundation of $9,500.00 per year until his resignation in 2001. The other officers of the Foundation were also compensated at varying salaries. In addition, some money was paid to certain officers to compensate their staff for work the staff performed for the Foundation. These support staff payments are known as administrative stipends. During the 1990s, Ms. Pumphrey, an employee of Dr. Stern, the Foundation's Program Director, was paid $12,000.00 directly to perform the administrative tasks for the Foundation. When Ms. Pumphrey retired, the Foundation Board of Directors, at a board meeting held on May 4, 1999, agreed to apportion her administrative salary between Dr. Stern and Dr. Armino, the Foundation's Vice President. These administrative stipends were paid by the Foundation's payroll company on a bi-weekly basis. No other administrative stipend was authorized at this board meeting.

Soon after the board meeting, Dr. Hurst approached Dr. Stern and requested that he too receive an administrative stipend due to increased work load and program expansion. Dr. Hurst stated that he thought it was unfair that $4,000.00 was going to Dr. Armino, who was only involved in Foundation work about 25% of the time, when his staff was involved 100% of the time. (Tr. at 128; Citations to "Tr." are to the transcript of the trial held on December 10, 2002.) Dr. Stern told him to present it to Dr. Butera, Foundation President at the time, present it to the board for final decision, and to provide the appropriate documentation. (Tr. at 88.)

Dr. Hurst never did present his request for an administrative stipend to Dr. Butera, (Tr. at 106), or to the Board. (Tr. at 51.) Yet, beginning on October 11, 1999, Dr. Hurst began to write checks from the Foundation to the Centerville Foot & Ankle Clinic for "Form 1099 Administrative expense." (Plaintiff's Exhibit 1.) By March 2001, Dr. Hurst had written eight checks to himself totaling $17,000.00. (Plaintiff's Exhibit 2-8.)

Upon Dr. Hurst's resignation, Dr. Feinberg, the incoming treasurer, conducted a complete review of the Foundation's records and discovered the entries for the eight checks written to Hurst's Clinic. Feinberg testified that Hurst explained the checks as payment for "some things that his secretaries did." (Tr. at 34.) Upon further review, Dr. Feinberg discovered several items belonging to the Foundation still in Dr. Hurst's possession and certain charges belonging to the Centerville Clinic that were charged to the Foundation. On January 14, 2002, Dr. Hurst tendered a check to the Foundation for $519.50

for the value of a laser printer and zip drive purchased by Hurst with Foundation funds and retained by him and for $53.75 charged on the Foundation's American Express card that were for preparation of the Centerville Clinic payroll. Sometime later, Hurst tendered a check to the Foundation for $83.14 for the services of a computer specialist Hurst hired to assist with Foundation work and who also did some work for the Centerville Clinic.

Virginia Podiatric Residency Foundation seeks the return of the $17,000.00 from the checks written by Hurst to himself and deposited into his Clinic's bank account.

## Analysis

Conversion is the wrongful assumption or exercise of the right of ownership over goods or chattels belonging to another in denial of or inconsistent with the owner's rights. *Universal C.I.T. Credit Corp. v. Kaplan*, 198 Va. 67, 75-76, 92 S.E.2d 359, 365 (1956). Any act of dominion wrongfully exerted over property in denial of or inconsistent with the owner's rights amounts to conversion. *Id.* In other words, conversion occurs when a person exercises control over another's property without authorization from the rightful owner to do so.

The law governing the conversion of personal property is applicable to negotiable instruments. *Hartzell Fan, Inc. v. Waco, Inc.*, 256 Va. 294, 505 S.E.2d 196 (1998). Therefore, to prove conversion, plaintiff must show, by a preponderance of the evidence, a right of possession or ownership of the property at the time of conversion and that defendant converted that property by exercising wrongful dominion and control over it, depriving plaintiff of possession. *See Universal C.I.T.*, 198 Va. at 75-76; *Bader v. Central Fidelity Bank*, 245 Va. 286, 289-90, 427 S.E.2d 184, 186 (1993); *Federal Ins. Co. v. Smith*, 144 F. Supp. 2d 507, 518 (E.D. Va. 2001).

In the instant case, the Foundation had a clear, definite, undisputed, and obvious property right to the funds represented by the eight checks to which the Foundation was entitled to immediate possession. *United Leasing Corp. v. Thrift Ins. Corp.*, 247 Va. 299, 306, 440 S.E.2d 902 (1994). Hurst deprived the Foundation of possession of the funds by exercising wrongful dominion and control over them when he wrote the checks and deposited them in his Clinic's bank account without authorization from the Board of Directors and without authority under the Foundation Bylaws.

Defendant asserts that Section 3(d) of the Foundation Bylaws authorized him to write the checks to himself for an administrative stipend,

without the need for Board approval. Section 3(d) states that the treasurer "may, without further authorization, contract bills for items essential to the conduct of his office and for rental of space and equipment." "Contract bills for essential items" implies an agreement with another party to provide needed items, documented by the submission of a bill that the treasurer may then pay. This specific authority is far different than the authority the Defendant reads into this section. Writing lump sum checks from Foundation funds to oneself for an administrative stipend, as the Defendant did in this case, does not fall under the authorization provided to the treasurer in section 3(d) of the Bylaws.

Defendant also claims that the "administrative stipend" payments he made to himself were authorized by Dr. Stern and Dr. Butera. This claim is uncorroborated and, except for the Defendant's own testimony, is not supported by any evidence presented at trial. While Dr. Hurst did discuss his need for an administrative stipend with Dr. Stern, Hurst never went any further to obtain authorization for such a stipend, as Dr. Stern had instructed. Both Dr. Stern and Dr. Butera testified that they were unaware that Hurst was writing these checks to himself and taking Foundation money for this purpose, even though Hurst made no effort to hide these payments. (Tr. at 92, 106, 119.)

The Foundation Board's past procedure regarding administrative stipends belies the Defendant's claim that the Foundation authorized these payments to him. Agreement to apportion the current administrative stipends took place at a Board meeting. These stipends were paid bi-weekly through the company payroll, not by lump sum checks such as Hurst wrote for himself. And, the evidence shows that the Board of Directors never considered the payment of an administrative stipend to Hurst at a Board meeting.

Irrespective of good or bad intentions, *Universal C.I.T.* at 76, when Hurst wrote and deposited the eight checks into his Clinic account, he wrongfully exerted control over the Foundation's property without authority and in denial of the Foundation's property rights. Dr. Hurst is liable for conversion in this case, and Plaintiff is awarded a judgment of $17,000.00 without interest.