## Richmond.

## MULLINS V. SUTHERLAND AND OTHERS.

### November 17, 1921.

1. SALES—*Conversion—Contract Providing that the Subject of the Sale Should be Applied on Certain Contracts of Buyer—Case at Bar.*—Plaintiffs sold defendant 500,000 staves, retaining title until payment in full. The contract contained a clause to the effect that it was understood by plaintiffs that the staves were to be applied on contracts of the defendant and to be shipped to such parties at such time as defendant might direct. Plaintiffs claimed that the contract restricted defendant to shipments to parties with whom he had existing contracts, and that the shipment of the staves in controversy was not to such a party and was therefore a conversion.

   *Held:* That it was doubtful if the contract was susceptible of this interpretation, but that even if this was the proper interpretation, it was necessary for plaintiffs to show, in order to recover in an action of trover, that the staves were not shipped to parties with whom defendant had existing contracts, and that the testimony in the case did not show with whom defendant had contracts on that date.

2. TROVER AND CONVERSION—*Evidence of Conversion—Opinion of Witness.*—Plaintiffs, sellers in a contract for sale of staves, contended that the contract provided that defendant should only resell the staves to persons with whom he had existing contracts. Plaintiffs delivered a portion of the staves "under this contract," and in an action of trover, if there was thereafter a conversion by defendant, it was incumbent upon plaintiffs to show the facts and not the mere opinion of a witness that there was such conversion.

3. SALES—*Contract Providing that the Subject of the Sale Should be Applied on Certain Contracts—Waiver.*—In an action of trover, if the contention of plaintiffs was correct that defendant was limited in his resale of the subject matter to persons with whom he had existing contracts, it was entirely competent for them to waive this provision of the contract and permit sales to other persons.

4. SALES—*Contract Providing that the Subject of the Sale Should be Applied on Certain Contracts—Waiver.*—Where by a contract of sale the buyer, defendant, was limited in his resale of the subject matter to persons with whom he had existing contracts, three witnesses for the defendant testified that one of the plaintiffs consented to a sale to one with whom defendant had no existing contract, and it appeared that with knowledge that shipment had been made to such party, plaintiffs insisted upon payment for this shipment.

*Held:* That this constituted a waiver of the right to insist that defendant could only sell to those with whom he had existing contracts.

5. TROVER AND CONVERSION—*Sales—Trover by Seller Where Title Has Passed to Buyer.*—Where under a contract for sale of staves, seller retained title until purchase money was paid, a clause providing that the staves should only be resold to parties with whom the buyer had existing contracts was waived, and the actual possession and right to the staves passed to the buyer and were by him sold to a party with whom he had no existing contract, the title passed upon the consummation of that sale, and the rights of the sellers were those of lienors for the purchase money, and there was no conversion for which they could maintain trover.

6. SALES—*Whether Conditional Sale or Mortgage.*—Courts have frequently, without regard to the designation of the contract by the parties as a conditional sale and the reservation of the title until the price is paid, construed the contract as in effect an absolute sale with a mortgage back as a security for the price and not a conditional sale, where the contract read as a whole and the special circumstances surrounding the transaction justified the conclusion that such was the ruling intention of the parties and the proper construction of the instrument as a whole.

7. SALES—*Whether Conditional Sale or Mortgage.*—Conditional sales are not favored in law, and where it is doubtful from the face of the instrument whether the contract is a conditional sale or a mortgage, the courts generally treat it as a mortgage, for the reason that such a construction will be most apt to attain the ends of justice, and prevent fraud and oppression, because an error which converts a conditional sale into a mortgage is less injurious than an error which changes a mortgage into a conditional sale.

8. TROVER AND CONVERSION—*Essentials—Possession.*—Trover cannot be maintained by one who has neither the actual possession of

the property nor the right to demand the immediate possession thereof.

Error to a judgment of the Circuit Court of Dickenson county in an action of trover. Judgment for plaintiffs. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Chase & McCoy,* for the plaintiff in error.

*Geo. C. Sutherland* and *A. A. Skeen,* for the defendants in error.   ,

BURKS, J., delivered the opinion of the court.

The defendants in error agreed to sell to the plaintiff in error 500,000 oak staves, by a contract under seal, bearing date February 10, 1919, which was modified by a supplemental contract in writing not under seal, bearing date September 6, 1919. The contract called for complete delivery by September 15, 1919. The supplemental contract simply extended the time for delivery. The price to be paid for the staves was $57.00 per thousand "f. o. b. cars at Fremont, Va., or other points in Dickenson county," on the orders of Mullins. The Sutherlands (who were the sellers, and designated in the contract as parties of the first part) agreed "not to knowingly deliver any culls," but, if upon inspection at destination by Mullins or his assigns or consignees, culls were found in the cars, it was agreed that Mullins, his assigns or consignees should "unload and remove them from the cars and make no charge therefor." Clauses six and eight of the original contract are as follows:

"Sixth. The party of the second part hereby agrees to pay for said staves as each car is shipped, and received and inspected at destination by consignees of the party of the second part, but in the event that said report is not received within twenty days from date of shipment, then said party of the second part is to pay forty dollars per thousand for the staves so shipped, the remaining seventeen dollars to be paid as soon as said report is received, and at any rate not to be longer than forty days from date of shipment. But title to the said staves is not to pass out of the party of the first part till payment is made in full for the said staves."

"Eighth. It is understood by the parties of the first part that the above staves are to be applied on contracts of party of the second part, and is to be shipped by parties of the first part to such firms, and at such times as may be directed by the said party of the second part; the parties of the first part are to furnish to party of the second part the car number and name and the quantity of staves shipped in each car as soon as convenient after each car is shipped."

At the time the original contract was entered into, it is claimed that Mullins had contracts with the Interstate Cooperage Company and A. Knabb and Company, but the character of these contracts, if any such existed, is not disclosed by the record. A large quantity of staves was delivered under the contract, but they are not in controversy here and need not be further noticed.

In January, 1920, the Sutherlands, on the order of Mullins, delivered to the railroad company 138,700 staves to be shipped under the contract. These staves were consigned by Mullins to the T. Johnson Company, at Chicago, and, upon inspection, the culls were thrown out, and the T. Johnson Company reported the shipment as containing 125,144. Prior to this shipment, Mullins had no contract with the T. Johnson Company, but his brother did have, and the staves

were shipped under the brother's contract under the name of Mullins Stave and Lumber Company. The Sutherlands made repeated efforts to collect of Mullins the contract price of this shipment without avail, and then brought trover against Mullins to recover damages as for conversion. They laid their damages at $13,000, and recovered a verdict for $9,015.50, which was far in excess of the contract price. W. E. Mullins was the brother under whose contract the shipment was made, and he was united as a defendant in the action. but the jury found in his favor. The verdict of the jury was so plainly right as to him that it is unnecessary to consider the cross-error assigned as to this finding.

The defendant, E. L. Mullins, did not plead at rules, but followed the usual course and pleaded "not guilty" at the calling of case on the court docket, and the case was laid over to a later day of the term. At this later date he tendered a special plea of recoupment under section 6145 of the Code, setting up the contract of February 10, 1919, and alleging a failure and refusal of the plaintiffs to deliver all of the staves called for by the contract and a consequent damage to him of a large amount which he offered to set off and have allowed against the plaintiffs' demand. The trial court rejected this plea without assigning its reasons therefor at the time. It is suggested for the defendants in error that the refusal might very properly have been because it was not filed at the time the plea of "not guilty" was filed, but this is too improbable to warrant a ruling on that supposition, as we find in one of the bills of exception, certified by the trial judge in his rulings on evidence offered to support that line of defense, the statement that, "The court sustains all of the objections upon the theory, and for the reason that the defendant is not allowed to plead an offset in damages or otherwise against the plaintiffs in action of tort." It is quite manifest that the trial judge re-

jected the plea because he thought such a plea was not admissible in an action which was in form in tort.

[1, 4] A number of errors have been assigned and several of them overlap each other, but in the view we take of the case it will not be necessary to consider them seriatim.

The Sutherlands admit that the staves in controversy were delivered to the railroad company on the order of Mullins, "for the purpose of shipping under this contract," but deny that they were shipped by Mullins under the contract. They insist that, at the time the contract was entered into, Mullins had contracts for shipments of staves to the Interstate Cooperage Company and to A. Knabb and Company; that the contract restricted Mullins to shipments to these two parties, and that the shipment of the saves in controversy by Mullins to the T. Johnson Company at Chicago, was a conversion of their property. According to the contention of the Sutherlands, section 8 of the contract would have to be interpreted as if it read, "It is understood by the parties of the first part (Sutherlands) that the above staves are to be applied on existing contracts of the party of the second part (Mullins) and are to be shipped by parties of the first part to such firms as the party of the *second part now has contracts with,* and at such times as may be directed by the party of the second part," etc. It may be well doubted if the contract is susceptible of the interpretation contended for. The circumstances under which the contract was entered into are not disclosed by the record, and the meaning of the language used is not clear. But if the situation be viewed in the light most favorable to the Sutherlands, it is conceivable that they intended to restrict Mullins to sales under his then existing contracts and retained the title until the staves were fully paid for, with a view to obtaining additional security for the purchase price. If this was their intention it was poorly expressed; and, in the absence of any

light on the surrounding circumstances, we are unable to say that is a proper interpretation of the contract and that Mullins should have so understood it. But, even if this be the proper interpretation, it was necessary for the Sutherlands to show, in order to recover in this action, that the staves were not shipped to parties with whom Mullins had contracts on February 10, 1919. The testimony in the case does not show with whom Mullins had contracts on that date. The nearest approach to it is the incidental statement of S. H. Sutherland in detailing a conversation with one of the parties, that "I knew that Luther's contracts were with the Interstate Cooperage Company and A. Knabb and Company." But it does not appear therefrom, nor elsewhere in the record, when these contracts were made. There is a statement in the testimony of S. H. Sutherland that they "loaded them for the purpose of shipping under this contract," and that "they were not shipped under the contract," but he states no reason for that conclusion. His opinion that they were not shipped under the contract should have been supported by facts showing that they were not so shipped. The Sutherlands delivered them "under this contract," and if there was thereafter a conversion by Mullins, it was incumbent upon them to show the facts and not the mere opinion of the witness that there was such conversion. Furthermore, if the contention of the Sutherlands be correct, that Mullins was limited in his sales to persons with whom he had contracts on February 10, 1919, it was entirely competent for them to waive this provision of the contract and permit sales to other persons. Three witnesses for the defendant, Mullins, testify that S. H. Sutherland, one of the plaintiffs, consented to the sale to the T. Johnson Company, and their testimony was in no way contradicted by any one, although S. H. Sutherland was recalled to the stand to testify to another matter after these witnesses had testified.

This shipment to the T. Johnson Company was made in January, 1920, and, in February and March following, S. H. Sutherland, one of the plaintiffs, was earnestly contending for the collection of the amount due under the contract of February 10, 1919,. and, although he was at that time "not positive where they had gone," "he had learned from the bill" that they had gone to the T. Johnson Company, and had ascertained that they had paid Mullins for them, for, in detailing a conversation with Mullins, he says, "and then I told him, I says, T. Johnson Company says these staves have been paid for, and he admitted they had been paid for." In addition to this, the other plaintiff, E. D. Sutherland, on March 18, 1920, wrote the defendant, Mullins: "Please let us have settlement on the stave contract, as this is long past due. I have written you two letters asking for payment and cannot quite understand why the delay in this matter." No reference is here made to any conversion, though the writer had ample time to have ascertained the fact, if it existed, and he intended to rely upon it. These facts constituted a complete waiver of the right, if it existed, to insist that Mullins could only sell to those with whom he had contracts on February 10, 1919, and the jury should have so found. They had no right to disregard the uncontradicted evidence on this question, and their verdict in this respect is plainly contrary to the evidence.

[5, 7] Therefore, the transaction was a perfected sale. The actual possession and the right thereto passed to Mullins, so that there was no conversion and the plaintiffs could not maintain trover. The title passed upon the consummation of that sale, and thereafter the rights of the plaintiffs (Sutherlands) were those of lienors for the purchase money. They could not sell and deliver the staves and at the same time remain the owners thereof.

"Courts have frequently, without regard to the designation of the contract by the parties as a conditional sale and the reservation of the title until the price is paid, construed the contract as in effect an absolute sale with a mortgage back as a security for the price and not a conditional sale, where the contract read as a whole and the special circumstances surrounding the transaction justified the conclusion that such was the ruling intention of the parties and the proper construction of the instrument as a whole. * * * Conditional sales are not favored in law, and where it is doubtful from the face of the instrument whether the contract is a conditional sale or a mortgage, the courts generally treat it as a mortgage, for the reason that such a construction will be most apt to attain the ends of justice. and prevent fraud and oppression, because an error which converts a conditional sale into a mortgage is less injurious than an error which changes a mortgage into a conditional sale." 24 R. C. L., sec. 744, and cases cited; *Heryford* v. *Davis,* 102 U. S. 235, 26 L. Ed. 160; *Singer Man. Co.* v. *Smith,* 40 S. C. 529, 19 S. E. 132, 42 Am. St. Rep. 897; *Montenegro, etc., Co.* v. *Beuris,* 160 Ky. 557, 169 S. W. 986, L. R. A. 1916-C 557. In no view of the case do we think that the action of trover can be maintained.

[8] The plaintiffs in the trial court mistook their remedy. They sued in trover when they should have sued on the contract. The evidence in the case fails to disclose a conversion, though it does disclose a plain violation of contract. They sold the staves to Mullins, and made delivery thereof "under this contract," and thereafter they had neither the actual possession of the staves nor the right to demand the immediate possession thereof, without which the action of trover does not lie.

The Sutherlands claim that Mullins is also indebted to them in other sums for money due them under the contract

of February 10, 1919, which could not be recovered in the action of trover, and for which an action on the contract would have to be brought, so that even if the present action in trover could be maintained, it would require two actions to give them complete relief. Furthermore, we are of opinion that, if the Sutherlands get the contract price for their staves, with interest and costs, they will be fully indemnified.

For these reasons, the verdict of the jury and the judgment of the trial court thereon will be set aside, and the action of the plaintiffs in the trial court will be dismissed, with costs, without prejudice to the right of the plaintiffs in said action to bring such action on the contract of February 10, 1919, as supplemented by the contract of September 6, 1919, as they may be advised.

*Reversed.*