# United Leasing Corporation, et al.

### v.

# Thrift Insurance Corporation, et al.

Record No. 930259

February 25, 1994

Present: All the Justices

*Thomas H. Roberts,* for appellants.

*John B. McCammon (Laura G. Fox; James H. Hudson, III; Wright, Robinson, McCammon, Osthimer & Tatum; Hudson & Bondurant,* on brief), for appellee Thrift Insurance Corporation.

*Kevin R. Huennekens (Yvonne S. Wellford; Patricia E. Mealer; Maloney Yeatts & Barr,* on brief), for appellee Dominion Bank, N.A.

JUSTICE KEENAN delivered the opinion of the Court.

In this case involving forged documents used to obtain approval for a loan, United Leasing Corporation and Consolidated Bank & Trust (the lenders) appeal from the trial court's final order sustaining demurrers to two causes of action, and granting summary judgment as to two additional causes of action.

We review the trial court's decision to sustain the demurrers pursuant to the rule that a demurrer admits the truth of all material facts properly pleaded in the motion for judgment, as well as facts that are impliedly alleged and those that may be fairly and justly inferred from alleged facts. *Palumbo v. Bennett,* 242 Va. 248, 249, 409 S.E.2d 152, 152 (1991).

A trial court may enter summary judgment only if no material fact is genuinely in dispute. Rule 3:18. The court, in considering a motion for summary judgment, must adopt those inferences from the facts that are most favorable to the nonmoving party, unless such

inferences are strained, forced, or contrary to reason. *Renner v. Stafford,* 245 Va. 351, 353, 429 S.E.2d 218, 220 (1993).

In 1988, the lenders agreed to finance a business venture planned by J&P Vending Services, Inc. The lenders provided J&P more than $115,000. To secure repayment of the obligation, the lenders obtained the personal guaranty of J&P's principal, James E. Carlton. The lenders also requested that Carlton obtain the personal guaranty of his parents, Charles E. and Anna J. Carlton, and that the parents give security for their guaranty by pledging 86 shares of stock they held in defendant, Thrift Insurance Corporation (Thrift). James Carlton had told the lenders that these shares were jointly owned by his parents. The Carltons did in fact own a total of 86 shares, represented by two stock certificates.

James Carlton provided the lenders with documents that purportedly fulfilled their requests. The guaranty given to the lenders bore James Carlton's signature, as well as his forgery of his parents' signatures. He also presented the lenders with documents that appeared to effect his parents' pledge of their 86 shares of stock in Thrift.

James Carlton was the secretary-treasurer of Thrift, and Thrift's corporate by-laws authorized him to act as sole transfer agent. Thus, when Thrift issued its corporate stock in a valid transfer, Carlton was authorized to add his authenticating signature. Here, Carlton manufactured a document that appeared to be a stock certificate showing that Charles Carlton owned 86 shares in Thrift. Carlton forged the signature of Thrift's president on the certificate and added his own signature. He then provided this counterfeit stock certificate to the lenders.

Carlton also gave the lenders a blank "Stock/Bond Power" for the transfer of the shares. This preprinted form was not filled in, except that it bore a signature purporting to be that of Charles Carlton. In addition, the form had been stamped with the words, "Signature Guaranteed—Dominion Bank of Richmond, VA," beneath which was a signature purporting to be that of an officer of defendant, Dominion Bank. Dominion Bank disputed the authenticity of its officer's signature on this form.

The lenders accepted these documents and proceeded to close the loan transaction. In connection with the transaction, the lenders also requested that Carlton obtain Thrift's acknowledgement of their security interest in the shares. A few weeks after the closing, Carlton wrote to the lenders, in his capacity as secretary-treasurer of Thrift, and falsely informed them that the pledge of the shares had been noted in the corporation's records.

Carlton's business, J&P Vending Services, later defaulted on the loan. The lenders obtained a judgment against J&P Vending and others, but were unable to satisfy that judgment. The lenders then

filed a motion for judgment against Thrift and Dominion Bank asserting several causes of action, four of which are the subject of this appeal. The lenders alleged that Thrift was liable to them on theories of fraud, common law conversion, and breach of its "duty of due care." They further alleged that Dominion Bank was liable to them for breach of warranty on its signature guarantee, pursuant to Code § 8.8-312.

Dominion Bank demurred to the allegation based on Code § 8.8-312. Thrift demurred to the allegation of negligence (breach of duty of due care). Thrift also filed a motion for summary judgment on the conversion and fraud counts.

After hearing argument on the demurrers and the motion for summary judgment, the trial court stated, "I am coming down in favor of [defendants' counsel]. . . . I am finding in their favor on their reasons." In its final order, the trial court sustained the demurrers, granted Thrift's motion for summary judgment, and dismissed the action with prejudice.

## I. BREACH OF WARRANTY CLAIM
## AGAINST DOMINION BANK

■ The lenders argue that the trial court erred in sustaining Dominion Bank's demurrer to their claim for breach of warranty. Pursuant to Code § 8.8-312(1), a signature guarantor warrants, among other things, that the signature of an indorser of a security is genuine.[1] Code § 8.8-312(8) provides that, under this warranty, the signature guarantor is liable for any loss resulting from its breach to any other person taking or dealing with the security in reliance on the guarantee.[2] Reliance and proximate cause are necessary prerequisites to the imposition of liability on a guarantor. Code § 8.8-312(8); *see also Flying Diamond Corp. v. Pennaluna & Co.,* 586 F.2d 707, 711 (9th Cir. 1978).

The lenders contend that the motion for judgment sufficiently alleges that they relied on Dominion Bank's guarantee of the signature

---

[1] Code § 8.8-312(1) provides:

(1) Any person guaranteeing a signature of an indorser of a certificated security warrants that at the time of signing:
 (a) the signature was genuine; and
 (b) the signer was an appropriate person to indorse as provided in § 8.8-308; and
 (c) the signer had legal capacity to sign.

[2] Code § 8.8-312(8) provides: "The foregoing warranties are made to any person taking or dealing with the security in reliance on the guarantee, and the guarantor is liable to the person for any loss resulting from breach of the warranties."

purporting to be that of Charles Carlton, and that they were thereby induced to enter the transaction with James Carlton and suffered the losses complained of. They argue that, because they pleaded the elements of reliance and proximate cause against Dominion Bank, pursuant to Code § 8.8-312(8), the trial court erred in sustaining Dominion Bank's demurrer. We disagree with the lenders.

As a matter of law, under the facts alleged in the motion for judgment, the lenders cannot establish that the signature guarantee of the forged signature on the stock/bond power was a proximate cause of their lack of recourse to the collateral. The motion for judgment alleges, in part, that "the Stock Certificate in [the lenders'] possession was in fact a fraudulently produced Stock Certificate."

Assuming, as alleged by the lenders, that Dominion Bank's officer guaranteed the forged signature, this guarantee warranted only that the indorser's signature was genuine, not that the transaction itself was valid. In contrast, a guarantee under Code § 8.8-312(5), in which the guarantor warrants, among other things, "the rightfulness of the particular transfer in all respects," would have encompassed the validity of the actual transaction.[3]

Because Dominion Bank made only the more limited warranty given under Code § 8.8-312(1), and the lenders did not receive or seek a guarantee of indorsement under Code § 8.8-312(5), the only loss for which Dominion could be held liable is a loss proximately caused by the wrongful signature guarantee. However, the lenders allege that their loss arose from defects in the "rightfulness of the particular transfer." In particular, their loss arose from Thrift's refusal to honor the counterfeit stock certificate, not from their inability to utilize the stock/bond power that bore Dominion Bank's signature guarantee. Therefore, since the lenders allege facts that preclude a finding that Dominion Bank's actions were a proximate cause of their loss, we conclude that the trial court did not err in sustaining Dominion Bank's demurrer on the breach of warranty claim.

## II. COMMON LAW CONVERSION CLAIM AGAINST THRIFT

The lenders assert that the trial court erred in granting Thrift's motion for summary judgment on their action for common law conversion. They argue that Thrift's failure to recognize the interest they claim in 86 shares in Thrift constitutes conversion of the lenders' property. We disagree.

---

[3] Code § 8.8-312(5) provides: "Any person guaranteeing an indorsement of a certificated security makes not only the warranties of a signature guarantor under subsection (1) of this section but also warrants the rightfulness of the particular transfer in all respects."

■ In *Universal C.I.T. Credit Corp. v. Kaplan,* 198 Va. 67, 92 S.E.2d 359 (1956), this Court reiterated the elements of conversion, explaining that the tort encompasses "any wrongful exercise or assumption of authority . . . over another's goods, depriving him of their possession; [and any] act of dominion wrongfully exerted over property in denial of the owner's right, or inconsistent with it." *Id.* at 75, 92 S.E.2d at 365.

Here, the motion for judgment alleges that the lenders "received a purported original Stock Certificate in the name of Charles Carlton"; that upon default of the principal obligor, the lenders demanded that the 86 shares of stock in Thrift "be turned over to them which has gone unsatisfied"; that 86 shares of stock in Thrift were in fact owned by Charles and Anna Carlton, which they held as joint owners; and that in November 1988, Thrift "redeemed and cancelled the 86 shares of stock in question." The lenders also allege in the motion for judgment that "Thrift's redemption of the stock assigned to the plaintiffs constitutes common law conversion."

■ The facts that the lenders allege do not give rise to a cause of action for conversion based upon Thrift's redemption of the *valid* shares held jointly by Charles and Anna Carlton. Specifically, the lenders allege no facts suggesting that, at any time, they acquired the rights of owners, including a security interest, in the 86 shares of stock actually owned by Charles and Anna Carlton. Thrift's redemption of these shares was a transaction between Thrift and the elder Carltons; it was not an action inconsistent with or in denial of any right possessed by the lenders.

Moreover, the lenders' allegations do not give rise to a cause of action for conversion based on Thrift's refusal to "turn over" to the lenders 86 shares of stock once the dishonest acts of James Carlton, Thrift's officer and transfer agent, had come to light. An action for conversion can be maintained only by one who has a property interest in and is entitled to the immediate possession of the thing alleged to have been wrongfully converted. *Mullins v. Sutherland,* 131 Va. 547, 554-55, 109 S.E. 420, 423 (1921).

■ In general, a cause of action for conversion applies only to tangible property. However, many courts have recognized the tort of conversion in cases where intangible property rights arise from or are merged with a document, such as a valid stock certificate, promissory note, or bond. *See, e.g., Triple-A Baseball Club Assocs. v. Northeastern Baseball, Inc.,* 655 F. Supp. 513, 538-39 (D. Me.), *aff'd in part, rev'd in part,* 832 F.2d 214 (1st Cir. 1987), *cert. denied,* 485 U.S. 935 (1988); *Simon v. Reilly,* 151 N.E. 884, 885-86 (Ill. 1926); *Lawson*

*v. Commonwealth Land Title Ins. Co.,* 518 A.2d 174, 176 (Md. Ct. Spec. App. 1986); *Pierpoint v. Hoyt,* 182 N.E. 235, 235-36 (N.Y. 1932); Restatement (Second) of Torts § 242 and cmt. e (1965). Nevertheless, a cause of action for conversion does not encompass claims for interference with *undocumented* intangible property rights. *See Unlimited Screw Prods., Inc. v. Malm,* 781 F. Supp. 1121, 1131 (E.D. Va. 1991); W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 15, at 90-92 (5th ed. 1984).

 The purported "right" the lenders assert here is an undocumented intangible property right. Specifically, they assert a right to obtain an adjudication that Thrift must honor the forged stock certificate. This "right" does not amount to a clear, definite, undisputed, and obvious property right in a thing to which they are entitled to immediate possession, sufficient to support a claim for conversion. For these reasons, we hold that the trial court did not err in granting Thrift's motion for summary judgment on the lenders' conversion claim.

In reaching this conclusion, we reject the lenders' assertion that they have a viable "conversion" action against Thrift under Code § 8.8-205.[4] The lenders failed to specify such a cause of action in their motion for judgment and did not invoke Code § 8.8-205 as a possible basis for recovery until they were called upon to oppose Thrift's motion for summary judgment.

 Moreover, the facts alleged in the motion for judgment are insufficient to state a cause of action under Code § 8.8-205. Among the allegations lacking in the motion for judgment is any assertion that the lenders are "purchaser[s] for value" "without notice," which are essential elements of a cause of action based on Code § 8.8-205. *See New Jersey Bank, N.A. v. Bradford Sec. Operations, Inc.,* 690 F.2d

---

[4] Code § 8.8-205 provides as follows:

**§ 8.8-205. Effect of unauthorized signature on certificated security or initial transaction statement.**—An unauthorized signature placed on a certificated security prior to or in the course of issue or placed on an initial transaction statement is ineffective, except that the signature is effective in favor of a purchaser for value of the certificated security or a purchaser for value of an uncertificated security to whom such initial transaction statement has been sent, if the purchaser is without notice of the lack of authority and if the signing has been done by

 (a) an authenticating trustee, registrar, transfer agent or other person entrusted by the issuer with the signing of the security, of similar securities, or of initial transaction statements or the immediate preparation for signing of any of them; or

 (b) an employee of the issuer, or of any of the foregoing, entrusted with responsible handling of the security or initial transaction statement.

339, 344-45 (3d Cir. 1982); *Victory Nat'l Bank v. Oklahoma State Bank,* 520 P.2d 675, 677-79 (Okla. 1973); U.C.C. § 8-205 cmt. 4.

Nevertheless, the lenders contend that, based on Code § 8.8-205, they are entitled to a trial on the merits of their "conversion" action. We disagree, because, to reach this result, we would be required to treat the additional facts and cause of action, stated solely in opposition to the motion for summary judgment, as an amended motion for judgment. Therefore, we will not consider further the lenders' claim that they were entitled to rely on Code § 8.8-205 in maintaining their "conversion" action.

## III. FRAUD CLAIM AGAINST THRIFT

The lenders assert in their motion for judgment that Thrift made representations, through its agent, James Carlton, that were false and made with the intent to deceive, so that Thrift should be held liable to the lenders for fraud. The lenders allege that the production of the manufactured stock certificate, the letter purporting to acknowledge the pledge of the 86 shares, and the representation that Charles Carlton held shares in his sole ownership, rather than jointly with Anna Carlton, were all misrepresentations made by Thrift to the lenders, upon which they relied to their detriment.

The lenders contend that the trial court erred in granting summary judgment for Thrift on the fraud claim. They assert that the issue whether they reasonably relied on Thrift's representations was a material fact in dispute, so that summary judgment was inappropriate.

In response, Thrift contends that this Court should not consider these arguments, since the lenders have failed to assign error to two independent grounds on which summary judgment was granted on the fraud claim. Thrift asserts that the trial court upheld its argument that the fraud action is barred by the statute of limitations, as well as its argument that Thrift is not liable for Carlton's representations, because he was acting outside the scope of his employment. We agree with Thrift.

The final order states that the motion for summary judgment is granted on the fraud action "for the reasons stated in the transcript of hearing." At the conclusion of the hearing, the trial court stated only that it was ruling in favor of Thrift "on [Thrift's] reasons." We conclude from those statements that the "reasons" referred to by the trial court included these two additional grounds advanced by Thrift. While a more precise statement by the trial court would have been desirable, the lenders had both the responsibility and the opportunity to seek such clarification. Having failed to do so, they cannot

seek to rely on comments that the trial court made earlier during the course of the hearing.

█ As Thrift notes, the lenders have failed to raise an assignment of error challenging these independent grounds adopted by the trial court in its ruling on the fraud action. Since the lenders have not appealed the ruling on these grounds, the order entering judgment for Thrift became final as to the fraud action and, thus, barred any appellate relief that might otherwise have been available to the lenders on the reliance issue that they raise here.[5] *See Crist v. Metropolitan Mortgage Fund, Inc.,* 231 Va. 190, 193, 343 S.E.2d 308, 310 (1986); *Stamie E. Lyttle Co. v. County of Hanover,* 231 Va. 21, 27, 341 S.E.2d 174, 178 (1986); *Haynes v. Bekins Van & Storage Co.,* 211 Va. 231, 233, 176 S.E.2d 342, 344 (1970).

## IV. NEGLIGENCE CLAIM AGAINST THRIFT

█ The lenders contend that the trial court erred in sustaining Thrift's demurrer on the negligence claim. In its demurrer, Thrift asserted that the lenders could not recover on a negligence theory, because the motion for judgment alleged only economic losses and did not allege that the lenders were in contractual privity with Thrift. Thus, Thrift contended in the trial court that, as a matter of law, the lenders could not prevail on a tort theory alleging Thrift's negligence and lack of due care in its hiring and supervision of James Carlton. *See Sensenbrenner v. Rust, Orling & Neale,* 236 Va. 419, 424-25, 374 S.E.2d 55, 57-58 (1988).

The lenders' written response to Thrift's demurrer did not attempt to refute Thrift's argument that the motion for judgment failed to state a cause of action for negligence. Similarly, in their argument before the trial court, the lenders did not address their negligence theory, and their general objection to the trial court's final order did not specify that the order was erroneous for this reason. Therefore, we will not consider this argument on appeal. Rule 5:25.

For these reasons, we will affirm the judgment of the trial court.[6]

*Affirmed.*

---

[5] The lenders also argue an estoppel issue arising from their fraud claim against Thrift. However, since they did not raise this issue in the trial court, we do not consider it here. Rule 5:25.

[6] The lenders also contend that the trial court erred in dismissing the case with prejudice. However, since the lenders have advanced no arguments in support of their position, either here or in the trial court, we will not consider further this contention. Rule 5:25.