Present: All the Justices

HAIRSTON MOTOR COMPANY

OPINION BY JUSTICE LAWRENCE L. KOONTZ, JR.
v. Record No. 960664        JANUARY 10, 1997

WILLIAM E. NEWSOME, JR.,
 T/A EDCO, ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
James F. Ingram, Judge


In this appeal, we consider the application of the provision in federal law governing the liability of common carriers arising under receipts or bills of lading, commonly known as the Carmack Amendment, formerly 49 U.S.C. § 11707, to the determination of proper venue for an action filed in state court.[1]  Finding that federal law provided the exclusive remedy for the loss alleged, the trial court construed the venue provisions within the Carmack Amendment to require dismissal of the action for lack of proper venue within Virginia.  For the following reasons, we will reverse the judgment of the trial court and remand the case for further proceedings.

I. BACKGROUND

In raising an objection to venue, the burden rests with the defendants to show that venue is improperly laid.  Texaco, Inc. v. Oaks, 214 Va. 676, 677-78, 204 S.E.2d 250, 251 (1974); Hodgson v. Doe, 203 Va. 938, 942, 128 S.E.2d 444, 446 (1962).  Here, because the defendants have offered no evidence contradicting the

---

[1]A general revision of the Interstate Commerce Act took effect January 1, 1996.  See P.L. 104-88, Title I, § 102(a), 109 Stat. 804 (1995).  Liability under bills of lading is now controlled by 49 U.S.C. § 14706.

factual allegations in the motion for judgment, we will accept those allegations as true for purposes of resolving the issue presented on appeal.

Hairston Motor Company (Hairston) operates a Volvo automobile dealership in Danville. Beginning in 1992, Volvo International began auctioning program and demonstrator vehicles to its dealers. Hairston regularly attended these auctions in Manheim, Pennsylvania, purchasing vehicles and contracting with Flynn Transport, Inc. (Flynn), which is based in Towanda, Pennsylvania, to transport the vehicles from Manheim to Danville.

On July 22, 1993, Hairston purchased 18 vehicles at an automobile auction in Manheim. It contracted with Flynn to deliver the vehicles to Danville. Flynn then engaged the services of William E. Newsome, Jr., trading as EDCO (Newsome), a resident of Fredericksburg, to deliver nine of the vehicles under Flynn's contract with Hairston.[2] Newsome maintained a cargo insurance policy with Northland Insurance Company (Northland). Northland has a registered agent for service of process in Richmond.

While en route to Danville, Newsome was involved in a single vehicle accident in which three of the vehicles he was transporting were damaged. Newsome delivered the undamaged vehicles to Hairston and turned the damaged vehicles over to

_____

[2]Flynn denied in its answer, and continues to deny on appeal, the allegation that Newsome was acting as its agent rather than as an independent contractor directly responsible to Hairston. Because the proceedings in the trial court did not reach the factual merits of this claim, we express no opinion on this issue.

Northland for adjustment.  Northland later sold two of the vehicles and has not paid any claim on the vehicles.  One sale was made in Chesapeake, Virginia.

On July 14, 1994, Hairston filed a motion for judgment against Flynn, Newsome, and Northland (collectively, the defendants), alleging that Flynn and Newsome had breached their contracts by failing to deliver the three vehicles, and that Northland had unlawfully converted the vehicles by selling two of them without Hairston's consent.

The defendants filed numerous responsive pleadings including substantially similar pleadings styled "OBJECTION TO VENUE AND MOTION TO TRANSFER."  The defendants asserted that Hairston's claims under state common law were preempted by application of the Interstate Commerce Act (the Act), which provides the exclusive remedy for liabilities incurred as a result of a common carrier providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission.  The defendants further asserted that the provisions of the Carmack Amendment of the Act required that the suit be brought "in the judicial district in which such loss or damage is alleged to have occurred," superseding the state venue statutes.  Identifying the physical damage to the vehicles resulting from Newsome's accident as the "loss or damage" upon which liability was predicated, the defendants averred that venue would lie in Pennsylvania.[3]

[3]Although there is some factual dispute over the precise location of the accident, the record supports the conclusion, and for purposes of our analysis we will assume, that the accident occurred in Pennsylvania.

In the alternative, the defendants asserted that, even if the provisions of the Carmack Amendment did not supersede state venue statutes, Pennsylvania was nonetheless a more convenient forum for the litigation.  In various other motions, the defendants demurred to the claims of the suit and sought dismissal on various grounds including res judicata, citing a prior federal suit arising out of the same factual circumstances.

After receiving briefs and hearing oral argument from the parties, the trial court dismissed the suit for lack of venue. Specifically, the trial court held "that the Carmack Amendment . . . is the applicable law governing this matter and . . . that the City of Danville is not a proper location for the trial of this matter under the provisions of Title 49, United States Code, Section 11707(d)(2)(A)(iii)."  The final order made no provision for transfer of the proceeding.  While noting that the "matter came on to be heard upon Defendants' Demur[rer]s and numerous Motions to Dismiss,"  the trial court did not address any issue other than the objection to venue based on the Carmack Amendment. We awarded Hairston this appeal, limited to the venue issues.

## I.  SCOPE OF FEDERAL PREEMPTION

Resolution of the venue issues upon which an appeal has been awarded in this case requires consideration of two questions: (1) whether federal law in fact controls the merits of the claims, and, if so, (2) whether the venue provisions of the applicable federal law compel dismissal here.

### A.  Preemption of Claims Against Common Carriers

Exercising its authority under the Commerce Clause, Article

I, Section 8, Clause 3 of the United States Constitution, the federal government has retained for itself the power to regulate and supervise the activities of common carriers operating across state lines.  The principal medium for enforcing this authority has been the Interstate Commerce Act.  In 1906, legislation which has become known as the Carmack Amendment included in the Act provisions for liability of common carriers arising under receipts or bills of lading.

Although the carrier is not an insurer under the Carmack Amendment, the shipper "need only prove, in essence, that the goods were received by the carrier at the point of origin but were delivered at the destination in a damaged condition or with a portion or all of the goods missing.  The liability [of the carrier] arises under a theory similar to res ipsa loquitur." United States v. Seaboard Coastline Railroad, 384 F.Supp. 1103, 1106-07 (E.D. Va. 1974)(citation omitted) (emphasis added).

In Adams Express Company v. Croninger, 226 U.S. 491 (1913), the United States Supreme Court determined that the Carmack Amendment superseded all state regulation with respect to claims arising out of such liability.  Id. at 505-06; see also Manieri v. Seaboard Air Line Railway Co., 147 Va. 415, 420, 137 S.E. 496, 498 (1927).

Since state courts have concurrent jurisdiction over claims controlled by the Carmack Amendment, see Missouri, Kansas & Texas Ry. v. Harris, 234 U.S. 412, 421 (1914), a case against common carriers asserting liability for loss or damage may properly be heard in the Virginia circuit court on the merits, applying

federal law.

B.  The Claim Against Northland Insurance

The motion for judgment alleges that Northland received damaged vehicles from Newsome "to either repair or to pay Hairston Motor Company for them."  It further alleges that Northland did not repair or pay for the vehicles, but sold two of the vehicles.  One of the sales allegedly occurred in Virginia. Based upon these allegations, Hairston asserted a claim for common law conversion against Northland.  Nevertheless, Northland has asserted that the Carmack Amendment precludes claims against an interstate carrier's insurance company in these circumstances. We disagree.

By its express terms, the Carmack Amendment applies only to the liability of a "common carrier" under a "receipt or bill of lading."  49 U.S.C. § 11707(a)(1)(now 49 U.S.C. § 14706(a)(1)). Northland is not a common carrier, see former 49 U.S.C. § 10102(4); see also 49 U.S.C. § 13102(12), nor is Hairston's action for conversion of property premised on a receipt or bill of lading.

An allegation of the tort of conversion asserts a "wrongful exercise or assumption of authority . . . over another's goods, depriving him of their possession; [and any] act of dominion wrongfully exerted over property in denial of the owner's right, or inconsistent with it."  Universal C.I.T. Credit Corp. v. Kaplan, 198 Va. 67, 75, 92 S.E.2d 359, 365 (1956).  While Northland may have initially acquired possession of the vehicles from its insured during the course of an interstate shipment,

Hairston's common law claim for conversion does not arise from the transportation or damage of the property, or even under the contract of insurance between Newsome and Northland.  Common law claims not superseded by the Carmack Amendment are preserved under the Act.  See former 49 U.S.C. § 10103.  Common law claims not premised on transportation or damage by carriers and not arising from a receipt or bill of lading are preserved under the Act.  See Sokhos v. Mayflower Transit, Inc., 691 F. Supp. 1578, 1581-82 (D. Mass. 1988).  Accordingly, we hold that the trial court's determination that the claim against Northland is preempted by federal law was in error, and dismissal of the action for violation of the federal venue provision was likewise in error.[4]

C.  Claims Against Flynn and Newsome

Hairston has asserted in a one-count motion for judgment that Flynn and Newsome breached their contracts to deliver the vehicles to Danville.  While Hairston's allegations did not cite federal liability standards, and indeed were pled solely ex contractu, they are indisputably claims against common carriers arising from loss or damage of goods in interstate transportation.  Hence, they are controlled by federal law, which preempts state regulation of liability in such circumstances. Croninger, 226 U.S. at 505-06.

For example, with respect to Flynn, it is specifically

_____

[4]Because the trial court did not address the issue of venue under Virginia's venue statutes with respect to Hairston's claim against Northland, we express no opinion as to that issue.

alleged that this defendant in its capacity as a common carrier contracted to deliver eighteen vehicles received in Manheim, Pennsylvania, and that "[f]ifteen of the eighteen motor vehicles which Flynn Transport, Inc. was engaged to deliver to Danville, Virginia were delivered. Three motor vehicles were not." It is further asserted that the value of the three vehicles not delivered was $53,525. With respect to Newsome, the motion for judgment alleges that Flynn "engaged" Newsome in his capacity as a common carrier to deliver nine of the eighteen vehicles, that after damaging three of the vehicles, Newsome turned the vehicles over to Northland, and that Newsome breached his contract "as a connecting carrier to deliver nine motor vehicles to Hairston Motor Company in Danville, Virginia." Although describing Newsome as a "connecting carrier," the factual averments expressly state that Newsome was also the delivering carrier of the nine vehicles he contracted with Flynn to deliver to Hairston.

We find, therefore, that Hairston's claims fall squarely within the subject matters in which common law claims are preempted, and to which federal carrier liability standards apply under the Carmack Amendment.

The issue upon which an assignment of error was granted is limited to the application of venue standards, rather than the sufficiency of plaintiff's motion for judgment to state a prima facie claim under the applicable federal standards. Hence, we turn to the question whether the venue provisions of the federal

statute preclude proceedings in Danville.[5]

### III. VENUE WHERE THE CARMACK AMENDMENT CONTROLS

The venue provisions of the Carmack Amendment pertinent to this appeal are found at former 49 U.S.C. § 11707:

. . . .

> (d)(1) A civil action under this section may be brought against a delivering carrier (other than a rail carrier) in a district court of the United States or in a State Court.  Trial, if the action is brought . . . in a State court, is in a State, through which the defendant carrier operates a . . . route.

> (2)(A) A civil action under this section may only be brought--

. . . .

> (iii) against the carrier alleged to have caused the loss or damage, in the judicial district in which such loss or damage is alleged to have occurred.

Clearly, under this statute venue in claims brought in a state court against a delivering carrier must be laid in a state through which the carrier "operates a . . . route," and a civil action against a carrier causing loss or damage to the cargo must be brought in the judicial district where "loss or damage is alleged to have occurred."

Flynn and Newsome assert that Hairston's claim is predicated upon the structural harm to, and resulting diminution in value of, the vehicles caused by Newsome's accident, and that this is

---

[5]The motion for judgment pled (1) that Hairston tendered the vehicles in good condition, (2) that three of the vehicles were not delivered, and (3) that Hairston suffered a loss as a result.  These elements arguably state a viable claim under the Carmack Amendment.  See Missouri Pacific Railroad Co. v. Elmore & Stahl, 377 U.S. 134, 137-38 (1964); see also Continental Grain Co. v. Frank Seitzinger Storage, Inc., 837 F.2d 836, 839 (8th Cir. 1988).

the "loss or damage" referenced by subsection (d)(2)(A)(iii) of the statute. They further assert that the "loss or damage" occurred in Pennsylvania rather than in Virginia and, thus, they argue that the statute mandates that the action be tried in Pennsylvania. We disagree.

First, these defendants disregard the fact that the damaged vehicles were not delivered to Hairston. Hairston's motion for judgment asserts a claim, alternately against each carrier, that they are liable because of failure to deliver in Danville all the vehicles consigned to them. This breach of the carriers' duty, and its associated loss to Hairston, occurred in Danville rather than in Pennsylvania. Accordingly, venue in Danville is consistent with the mandate of subsection (d)(2)(A)(iii) of the federal statute.

Second, we reject the defendants' assertion that venue is improper in Danville for lack of a showing that defendants "operate a . . . route" through Virginia as required by subsection (d)(1), since their liability is predicated on one or the other of them being the "delivering carrier."

We are not persuaded that the Carmack Amendment's provisions for venue are to be so narrowly construed as to mean that a carrier may only be subject to suit in a state through which it maintains regularly scheduled or published routes. Rather, we construe them to require simply that an interstate carrier, other than a rail carrier, is subject to suit only in a state through which it actually transports property. Here, the motion for judgment expressly avers that both Flynn and Newsome contracted

to transport vehicles within Virginia, that Flynn had delivered vehicles into Virginia in the past, and that both Flynn and Newsome actually delivered vehicles in Virginia in the current instance.  Defendants have not controverted these facts.

We hold that on the facts as pled, these carriers operated a route through Virginia as contemplated by subsection (d)(1) of the federal Act.  For these reasons, we further hold that Danville is a permissible venue with respect to the claims against Flynn and Newsome, and that the trial court erred in dismissing the action against them on venue grounds.

Accordingly, we will reverse the judgment of the trial court and remand the case for further proceedings.

Reversed and remanded.