Affirmed by unpublished opinion. Judge MOON wrote the opinion, in which Judge Luttig joined. Judge TRAXLER wrote an opinion concurring in part and dissenting in part.
OPINION
MOON, District Judge.
Appellant Susan M. Smith was the wife of Myron Smith, who worked for the Armed Forces Benefit Association (“AFBA”) as a life insurance claims analyst. Myron Smith stole a total of $300,000 from AFBA in an insurance fraud scheme, whereby he obtained checks payable to his brother for the death of persons falsely claimed to have named his brother as beneficiary. Susan Smith is not alleged to have had knowledge of her husband’s fraudulent scheme, but a significant portion of the $300,000 was used to pay off her debts and obligations. Myron Smith was later killed in California, leaving Susan the beneficiary of a large life insurance policy.
Appellee Federal Insurance Company (“FIC”) provided insurance coverage for the AFBA, including coverage for losses resulting from employee theft. FIC paid AFBA for its losses, and AFBA assigned all claims and rights of recovery relating to Myron Smith’s thefts to FIC.
FIC brought this conversion action against Susan Smith seeking recovery of the $300,000. The trial judge, in a non-jury trial, found that Susan Smith was hable to FIC for conversion of $229,449.24 of the $300,000 Myron Smith fraudulently obtained from the AFBA. Susan Smith seeks reversal of the trial court’s decision, asserting that the law of conversion is inapplicable to the case for three reasons: (1) FIC did not have a right to the money at the time it was converted and thus has no standing to maintain the action; (2) she acted in good faith, had no knowledge of the fraud, and never exercised dominion or control over the funds; and (3) FIC’s claim *632 against her was merely an “undocumented intangible property right.” We disagree and hold that, under the facts and circumstances of this case, Susan Smith is deemed to have converted all of the funds that Myron Smith fraudulently obtained and applied to her debts, whether she directly handled them or not.
Because this matter is in federal court on diversity grounds, the choice of law rules of the forum state, Virginia, apply. Klaxon v. Stentor, 313 U.S. 487, 496-97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The applicable Virginia choice of law rule, lex loci delicti, requires the application of Virginia substantive law to this case. See Milton v. IIT Res. Inst., 138 F.3d 519, 521 (4th Cir.1998). Where circumstances of this case are without directly applicable precedent in Virginia courts, we instead draw from principles of conversion law in Virginia and elsewhere to predict how this case would be decided in Virginia courts. In doing so, we review the district court’s determinations of Virginia law de novo. Salve Regina College v. Russell, 499 U.S. 225, 231-32, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991). The essential facts of the case are not in dispute on appeal.
I.
A. FIC’s Standing to Pursue Conversion Claim
We first address, and dispense with, Susan Smith’s claim that FIC has no standing to bring a conversion action because it did not have a right to the funds at the time of conversion. AFBA, Myron Smith’s employer and the immediate victim of his fraudulent actions, had a right to the funds at the time of conversion. FIC paid AFBA for the loss and AFBA explicitly assigned all of its rights and claims relating to Myron Smith’s thefts to FIC. Therefore, FIC is subrogated to the rights and claims of AFBA, and FIC has standing to pursue a claim of conversion against Susan Smith.
B. Dominion and Control over Funds
Next, we address Susan Smith’s claim that she cannot be held liable because she was acting in good faith without knowledge of the theft and never exercised dominion and control over the funds. There is no directly applicable law in Virginia regarding a conversion action against an innocent person for whose benefit embezzled funds have been spent. This requires that we consider general principles of conversion law in Virginia and elsewhere.
Virginia law defines conversion as any distinct act of dominion or control wrongfully exerted over the property of another, either inconsistent with, or in denial of, the owner’s rights. Hairston Motor Co. v. Newsome, 253 Va. 129, 135, 480 S.E.2d 741, 744 (1997). A plaintiff seeking recovery on a claim of conversion must prove that the defendant converted it by “any” wrongful exercise of dominion or control that deprived the plaintiff of his rightful possession. See, e.g., Universal C.I.T. Credit Corp. v. Kaplan, 198 Va. 67, 75-76, 92 S.E.2d 359, 365 (1956), citing 19 Michie’s Jurisprudence, Trover and Conversion, § 4 at 27. The Virginia Supreme Court, in Universal C.I.T., provided the following description of conversion:
Any distinct act of dominion wrongfully exerted over the property of another, and in denial of his rights, or inconsistent therewith, may be treated as a conversion and it is not necessary that the wrongdoer apply the property to his own use. And when such conversion is proved, the plaintiff is entitled to recover, irrespective of good or bad faith, care or negligence, knowledge or ignorance.
Id. at 76, 92 S.E.2d 359.
As a rule, a wronged party can recover money converted if the possessor did not *633 receive it in good faith or for valuable consideration, even if the money has changed forms. See, e.g., Bader v. Central Fid. Bank, 245 Va. 286, 427 S.E.2d 184 (where the plaintiffs bank paid on a forged instrument, the plaintiff could bring suit against the bank for conversion of the instruments). See also In re Whitacre Sunbelt, Inc., 211 B.R. 411, 417-18 (Bankr.N.D.Ga.1997), Restatement (Second) of Torts § 229 cmt. d (1965). In order to recover in conversion for money that has changed forms, however, the proceeds must be traceable to the original conversion. Central Nat’l Bank v. Connecticut Mut. Life Ins. Co., 104 U.S. 54, 66-68, 26 L.Ed. 693 (1881) (“[money’s] character is not changed by being placed to [a holder’s] credit in his bank account.” Id. at 66, 26 L.Ed. 693). When proceeds can be traced to an embezzlement or conversion, courts in a majority of states considering the issue have allowed the wronged party to recover in two distinct scenarios, among others. Many states allow the wronged party to recover life insurance proceeds from the beneficiary when the policy premiums were paid with embezzled funds, usually by imposing a resulting or constructive trust on the life insurance proceeds. 24 A.L.R.2d 672 (1952). Similarly, in a majority of states that have ruled on the issue, a chattel purchased with stolen money can be recovered if the possessor did not give consideration for it. 38 A.L.R.3d 1354 § 8 (1971). Nothing in Virginia law indicates that Virginia courts would not follow the majority on these issues; we believe Virginia courts would likely adopt the same approach in this case. In these scenarios, there were specific funds upon which a trust could be imposed, i.e., the proceeds of the life insurance policy bought with stolen funds and the chattels bought with the stolen funds. Thus we believe Virginia would allow an action against an individual for funds transferred to that individual. Here, debts were paid with stolen funds and the question is whether Virginia would allow a conversion action in the absence of direct physical dominion and control over the proceeds. We hold that it would.
Susan Smith argues that she could not have converted the funds because she did not have sufficient dominion and control over them, and essentially that she was an innocent party to the conversion. While Susan Smith is assumed to have been acting in good faith, she gave no valuable consideration for any of the money that she directly controlled or that was paid to her accounts. The trial judge meticulously traced the embezzled funds to Susan Smith’s accounts, whether the ultimate account was a bank account, or the payment of her debts. In so doing, he considered four categories of checking transactions and found the requisite dominion and control by Susan Smith over each.
First, the trial judge considered what he called the clearest example of conversion. In this transaction, Myron Smith gave Susan Smith a $4,500 check, written on a USAA Savings Bank checking account (“USAA account”) he held jointly with his brother. Susan Smith subsequently deposited the check into a North West Federal Credit Union account (“NWFCU account”), held jointly by Susan and Myron Smith. In another transaction, the trial judge considered a $56,000 check given to Susan Smith by Myron Smith. This check was drawn on the USAA bank account with instructions for Susan Smith to deposit the funds into their joint NWFCU account, and to use those funds to pay off the couple’s NWFCU loans. Susan Smith deposited the $56,000 check and directed that the funds be used to pay loans on which they were jointly obligated. Thus, the stolen funds or their equivalent were in her physical possession before her debts *634 were paid with them. We therefore hold that the facts and circumstances are sufficient to support the trial judge’s determination that Susan Smith exercised dominion and control over the $4,500 check, and hold that she is liable to FIC for that portion of the converted money. We likewise hold the facts and circumstances sufficient to support the trial judge’s finding that Susan Smith is hable to FIC for the conversion of the $56,000 check, money Susan Smith deposited to pay her joint obligations with Myron Smith.
A more difficult analysis is required when considering the funds over which Susan Smith exercised no physical dominion or control. One category of these funds involved Myron Smith issuing checks, totaling $57,261.52, drawn on his USAA checking account, to satisfy individual obligations of Susan Smith and joint obligations of the couple. In effect, Myron Smith converted the funds, then transferred them to his bank account, and then used the funds to pay Susan Smith’s non-bank creditors to which she and Myron were jointly and severally liable.
If Susan Smith had actually handled the checks before they were used to satisfy her financial obligations, the transaction would be indistinguishable from the $56,000 check described above. We refuse to draw a distinction, however, based on the presence or lack of actual physical control over the funds. Susan Smith knew that when she incurred a debt, it would be paid by her husband from funds available to him, including funds derived from her salary as a Central Intelligence Agency employee. It was by their prior arrangement that Myron handled the couple’s finances and would pay bills as they were presented. Myron Smith, in sending the payment, was doing only what Susan Smith expected of him and knew he would be doing on her behalf. Thus, there was virtually no distinction between her delivering the checks to her creditors and her husband mailing the checks to her creditors. Furthermore, physical handling of converted property is not essential for liability for conversion, i.e. Michie’s Jurisprudence, Trover and Conversion, § 4 at 27, citing Wholesale Coal Co. v. Price Hill Colliery Co., 98 W.Va. 438, 128 S.E. 313 (1925).
In this case, Susan Smith gave no consideration for the funds that were used to enrich her financial position by paying off her debts, and FIC’s rights to the funds continued through the time the funds were used to pay those debts, at which point Susan Smith’s creditors gave valuable consideration for the funds, effectively by canceling her debt. Looney v. Belcher, 169 Va. 160, 166-68, 192 S.E. 891 (Va.1937) (forbearance of debt constitutes valuable consideration as one party is abandoning a legal right). When the debt was paid, the value of her estate, over which she had control, was increased in the amount of the payment. Thus, the funds were traced into her estate, and the fact that the funds were in the form of credit at this stage and no longer cash is of no matter. See Bader v. Central Fid. Bank, 245 Va. 286, 427 S.E.2d 184 (Va.1993). We therefore hold that the facts and circumstances are sufficient to support the trial judge’s determination that Susan Smith exercised dominion and control over the $57,261.52, and that she is liable to FIC for the conversion.
Myron Smith also issued, in a separate category of transactions identified by the trial judge, a check for $137,000 on the USAA account that was deposited into Susan Smith’s and his joint NWFCU account and subsequently used to pay off various loans, bills, and other obligations of Susan Smith. We will apply the same analysis for this transaction as for the above $57,261.52 category. FIC presented evi *635 dence showing that $111,687.72 of these funds were used to pay Susan and Myron Smiths’ joint obligations and expenses. We likewise hold that the facts and circumstances are sufficient to support the trial judge’s determination that Susan Smith is liable for conversion of $111,687.72 of these funds.
In total, Susan Smith is hable to FIC for $229,449.24 of the funds stolen by Myron Smith from the AFBA.
C. Property Subject to Conversion
Finally, Susan Smith urges this court to hold that the embezzled funds, used for her benefit, were an “undocumented intangible property right,” and therefore not subject to the law of conversion, relying upon United Leasing Corp. v. Thrift Ins. Corp., 247 Va. 299, 440 S.E.2d 902 (1994). In Thrift, a corporate officer of defendant Thrift Insurance forged documents that secured his personal loan. The forged documents purportedly were a guaranty of his parents to secure their son’s loan by pledging a number of shares of stock they held in Thrift Insurance. When the officer defaulted, plaintiff United Leasing demanded that Thrift turn the shares of stock over to it. The Court held that United Leasing never had a right to the shares, but had only an “undocumented intangible property right” that did not give rise to a common law cause of action for conversion. Id. at 304-06, 440 S.E.2d 902.
Susan Smith’s argument fails because unlike the plaintiff in Thrift, FIC had a right to the funds at the moment of embezzlement. Myron Smith fraudulently obtained checks from AFBA. He never had a right to the checks or the funds they represented, and AFBA remained the rightful owner of those funds. Thus, FIC’s claim is not to an undocumented intangible property right, but to a clearly established property right.
II.
The trial court also considered an alternative unjust enrichment theory under which FIC could recover from Susan Smith, determining that FIC was entitled to a smaller portion of embezzled funds, $96,687.72,* on this theory. We will not consider the alternative theory of unjust enrichment because the case is resolved in FIC’s favor on the conversion claims.
III.
In conclusion, the judgment of the trial court is affirmed.

AFFIRMED.

 The unjust enrichment claim was based on a starting amount of $150,000, representing the funds Myron Smith obtained through one of the two fraudulent schemes. The remaining $150,000 would have been challenged on statute of limitations grounds. The trial court then calculated the portion of $150,000 that directly and unjustly enriched Susan Smith in order to arrive at the $96,687.72 figure.